No. 80—RICHARD W. BONNER, plaintiff in error, *vs.* THE STATE OF GEORGIA, *ex relatione*, COLUMBUS A. PITTS, defendant in error.

[1.] According to the provisions of the Act of 1819, the Justices of the Inferior Courts in this State continue in office for the term of four years, and until their successors are elected and *qualified : Held*, that an election of Clerk of the Court of Ordinary, on the second Monday in January, 1849, by the old Justices, between the election and *qualification* of their successors in office, was a good and valid election.

[2.] Where a person is in office under a *prima facie* title thereto, by *color of right*, the remedy to admit another, having a lawful claim, is not by mandamus ; but the appropriate remedy is by information in the nature of a *quo warranto.*

Mandamus.    Decided by Judge MERRIWETHER, Jones Superior Court, April Term, 1849.

On the first day of January, 1849, at an election for Justices of the Inferior Court of Jones County, Joseph Day, James Gray, William Moreland, Sterling W. Smith and Thomas S. Humphries, were elected, and their election was duly certified to His Excellency the Governor, who returned their commission, together with a " *dedimus potestatem*," &c. to the acting Justices of the Inferior Court of said County.

On the second Monday in January, at the regular term of the Court sitting for Ordinary purposes, the commission and " *dedimus*" having been received, before qualifying the new Court the old Court proceeded to elect a Clerk of the Court of Ordinary for the ensuing two years, and Columbus A. Pitts, the acting Clerk, was duly elected.   Upon the afternoon of the same day, the newly elected Justices, after being qualified and commissioned, proceeded to elect a Clerk, which resulted in the election of Richard W. Bonner.   Certificates of the election were sent by each Court to the Governor of the State, who sent a commission to Bonner, the Clerk elected by the new Court, to whom Pitts delivered up the books and papers of the office, and who proceeded to discharge its duties.

Subsequently, on 31st March, 1849, Columbus A. Pitts prayed for and obtained a mandamus *nisi*, directed to Richard W. Bonner, the acting Clerk, alleging the foregoing facts ; and farther,

that the election of Bonner was not by the Justices, as a Court sitting for Ordinary purposes, the same having adjourned, and there being neither Clerk or minutes of the Court present, and that his election was void ; and requiring that Bonner show cause, at the regular term of the Court, why he should not deliver up the books, &c. to the relator, Pitts, and permit him to be restored to the full enjoyment of the office of Clerk of the Court of Ordinary.

To this, the respondent, Bonner, made return, and for cause why the mandamus should not be made absolute, submitted—

1st. That the writ of mandamus should have been directed to His Excellency, Governor Towns, and not to the respondent, because it is not within his power to restore the office to him.

2d. That, holding the office under color of right, at least, mandamus was not the proper remedy, but an information in the nature of a writ of "*quo warranto*."

3d. That it was the exclusive province of the Governor of the State, to decide between the claims of respondent and relator, and the Superior Court had no jurisdiction of the question.

4th. That the election of relator, was by a Court whose term of office had expired.

5th. Because the election of Pitts was made in fraud of the law and of the rights of the citizens of Jones County, because the Justices had, at the time, the commissions of the persons elected as their successors, with a "*dedimus*" from the Governor, to qualify them ; that their successors appeared and demanded to be qualified, which was refused by the Court then sitting.

6th. That the respondent was duly elected and commissioned as Clerk of the Court of Ordinary, and entitled to discharge its duties.

7th. That relator had voluntarily delivered up the books, &c. to respondent, and had thereby abandoned his claim to said office, if any he had.

The Court below granted a mandamus absolute ; and from this decision Bonner appealed to this Court.

The questions here argued and decided, were—

1st. Whether the election of Pitts was valid and binding.

2d. Whether a mandamus was a proper remedy.

CONE, for plaintiff in error.

1st. The record discloses the fact, that the plaintiff in error is in the possession of the office of Clerk, by virtue of the commission from the Governor of the State; he is therefore exercising the duties of the office, under color of right.

The relator claims title to the office. In such case, the title of the plaintiff can be inquired into only by writ of *quo warranto*. 6 *Iredell*, 155. 5 *Stew. & Port.* 40. 1 *Ala. R.* 688. 3 *Johns. Ca.* 79. 2 *Johns. R.* 190. 5 *Hill*, 616. 3 *Dallas*, 490. 4 *Cowen*, 100 *in notes.* 3 *Black. C.* 262. *Angell & Ames on Corp.* 557. *Petersdorf*, 349, 352.

2d. The proper office of mandamus is to enforce the performance of some official duty; therefore, a writ of *mandamus* should not be granted, where the prayer of the petition is, that it may be issued against one having no power to execute it. *State vs. Dunn, Minor*, 46. 1 *Cowen*, 502. 5 *Pick.* 329. 1 *Minor*, 47. 3 *Smede & Marsh.* 713. 1 *Iredell*, 22. 4 *Humph.* 437. 1 *Iredell's Law*, 416. 4 *Serg. & Rawle*, 448. *Bacon's Abridg. title " Mandamus,"* E. 5 *Comyn's Dig.* 44. 3 *Black. Com.* 265.

3d. The writ of *mandamus* will not lie, where there is another remedy. 2 *Term R.* 259. 1 *Ala. R.* 15. 3 *Black. Com.* 110. 1 *Cranch*, 67. 1 *Cowen*, 417. 7 *East*, 353. 2 *Maule & Sel.* 80. *Dudley's Geo. Decis.* 37. *Minor*, 56. 2 *McCord*, 170. 1 *Wend.* 318. 2 *Grattan*, 575. 2 *Leigh*, 165. 10 *Miss.* 117. 3 *Johns. Ca.* 79. 3 *Smith*, 369. 5 *Comyn's Dig.* 31. *Cowp.* 378.

4th. Writ of *quo warranto* lies against an officer commissioned under the authority of the State. 1 *McCord*, 52. 2 *Stewart*, 231. 1 *Miss.* 115. 10 *Mass.* 290. 1 *Cranch*, 67. 1 *Cond. R.* 267.

5th. The acts and conduct of the old Justices, in refusing to qualify the Justices elect, as set forth in the bill of exceptions, was a violation of their duty and a fraud upon the rights of the people; and rendered their action, in relation to the election of Clerk, void. *Prince's Dig.* 180, 910, 179. *Hotchkiss*, 501, 507 to 510. *Prince's Dig.* 177. *Hotchkiss*, 688, 689.

6th. The surrender of the office of Clerk and its records, and the giving entire control of the same, by the relator to the plaintiff in error, bars the relator of any right or claim to the office. 1 *Dev. & Bat.* 61. *Ib.* 406. 42 *Eng. Com. Law*, 760. 2 *Barn. & Ald.* 339.

R. HARDEMAN, for defendant in error, submitted—

1st. That the members of the Court, by whom relator was elected on the 2d Monday in January, 1849, were the Justices of the Inferior Court for the County of Jones, and as such, constituted the Court of Ordinary for four years from the time of their election, and until their successors were elected *and qualified*; and as such, Justices had the right to hold the Court of Ordinary for said County, on the 2d Monday in January, 1849, and to elect a Clerk. *Prince's Dig*. 180, 181.

2d. That the relator, Columbus A. Pitts, having been duly elected Clerk of the Court of Ordinary of Jones County, on the 2d Monday in January, 1847, and commissioned as such by the Governor; and not having been removed for malpractice in office, has the legal right to act as such Clerk, until a legal successor to him is elected; and that relator's re-election on the 2d Monday in January, 1849, was legal, and by the proper legal power, when sitting as a Court of Ordinary; and that the subsequent election of Bonner was illegal and void, having been made subsequent to relator's election, and by the Justices when sitting otherwise than a Court of Ordinary. *3d Article of the Constitution of Georgia, section* 6, *Prince's Digest*, 910, 231, 239, 241. *Acts of* 1839, '41.

3d. That where a party is improperly suspended or removed from an office that concerns the public, or administration of justice, a *mandamus* lies to restore him, provided he has no other specific legal remedy. *4 Bacon, title Mandamus*, 496, 500, 501, 502. *2 Selwyn's Nisi Prius*, 817. *Drew vs. The Justices of the Sweet Spring District*, 3 *Hen. & Munf*. 1, 22, 23, 35, 36, 37, 38, 39, 46 *and* 47. *Cowper*, 370. 2 *Bay*, 105.

4th. A *mandamus* must be directed to him who is obliged to execute and obey it. *Bacon, title Mandamus*, 516. 2 *Selwyn's Nisi Prius*, 816, 827. It will not lie against the Chief Executive of a State.

5th. The writ of *quo warranto* or information in the nature thereof, would not be a sufficient remedy for relator, because the judgment of the Court in such case, is, that the franchise or office be seized for the benefit of the public, and that the intruder be ousted and fined, and that he pay the cost. It would not restore relator. 2 *Selwyn's Nisi Prius*, 873, 893. *Schley's Digest*, 347. 3 *Hen. & Munf*. 16, 17, 35.

6th. That relator could not bring *quo warranto*, at his own mere will and right, because such writ must be brought in the name of the Attorney General or Solicitor General.    2 *Selwyn's Nisi Prius*, 873, '4.    *Blackstone's Commentaries.*    3 *Hen. & Munf.* 16, 37.

*By the Court.*—WARNER, J. delivering the opinion.

Two questions were submitted on the argument of this cause, for the judgment of the Court :

1st. Whether the election of Pitts, as Clerk of the Court of Ordinary, by the old Justices of the Inferior Court of Jones County, as stated in the record, was a legal and valid election.

2d. Admitting that Pitts had been duly and legally elected by the old Court, was a *mandamus* the proper remedy to vacate the office of Clerk of the Court of Ordinary held by Bonner, under a commission from the Executive of the State, and who was exercising the duties of that office under such commission.

[1.] Was the election of Pitts by the old Justices, legal and valid in law ?    Had the old Court the legal power and authority to elect a Clerk of the Court of Ordinary, at the time and in the manner Pitts was elected ?

By the Act of 16th February, 1799, jurisdiction is expressly given to the Courts of Ordinary in each County in this State, to appoint their own Clerks.    *Prince*, 231.

By the Act of 1811, the Justices of the Inferior Court in the several Counties of this State were required, at the usual places of holding their Courts, on the first Monday in January in the year 1813, and on the first Monday in January in every second year thereafter, to proceed by ballot to the choice of Clerks of the Courts of Ordinary, who shall hold their office for and during the term of two years, unless sooner removed for malpractice in office, and until a successor is in manner aforesaid elected. *Prince*, 241.

By the Act of 1839, after reciting, it frequently occurs that the Justices of the Inferior Court for the several Counties of this State, fail to elect a Clerk for the Court of Ordinary, on the first Monday in January, as required to do by law ; for remedy whereof, it is declared, "that in future, where the Justices of the Inferior Court, as aforesaid, shall fail to elect a Clerk as aforesaid, that it shall and may be lawful for the said Justices, or a major-

ity of them, to proceed at any time thereafter, and previous to the next regular time of said election, to elect a Clerk as aforesaid." *Pamphlet Laws*, 1839, '41.

The election of Pitts was made by the Justices of the Inferior Court of Jones County, at the usual place of holding Court in that County, on the second Monday in January, 1849, as provided by the Act of 1839. At the time of the election of Pitts by the old Justices, on the second Monday in January, 1849, the newly elected Justices of the Inferior Court were *not qualified* to make an election of Clerk—they had not taken the oath of office as prescribed by law. The old Justices of the Inferior Court, who had been previously elected according to law, and who made the election, were duly qualified as such Justices, and authorized and empowered to do all official acts entrusted to them and enjoined upon them by law, at the time the election of Pitts was made by them. By the first section of the Act of 1819, it is declared that the Justices of the Inferior Courts shall continue in office for the term of four years, and *until their successors are elected and qualified*, unless removed, &c. *Prince*, 180.

The official power and authority of the old Justices, did not terminate when their successors were *elected* on the first Monday in January, 1849; their official power and authority continued until their successors were not only elected, but *qualified* by taking the oath of office.

That the old Justices were clothed with the legal power and authority to make the election of a Clerk of the Court of Ordinary for Jones County, at the time and place specified in the record, under the Constitution and laws of this State, is a proposition too plain, in our judgment, to admit of argument or discussion. But it is said that the old Justices, in making the election of a Clerk before the newly elected Justices were qualified, practised a fraud upon the people of Jones County; and therefore, the election of Pitts is void. If the old Justices have acted in bad faith towards those, whose agents they were; if they have violated the trust and confidence reposed in them by their constituents, who appointed them to office, then are they responsible to them; and with them we leave their official conduct, so far as they may be considered as having *abused* it, for any selfish or improper object. The only question for us to decide is, whether they had the *legal* power and authority to make the election of

the Clerk of the Court of Ordinary; not whether they *abused* the power and authority with which they were clothed, by exercising it improperly and indiscreetly.   Did Pitts, the Clerk elected by the old Justices, acquire a right and title to the office, for the term of two years, by virtue of said election?   We are of the opinion that he did acquire such right and title to the office, by virtue of his election as stated in the record; and therefore, we affirm the judgment of the Court below, as to this branch of the case.

[2.]  Was the proceeding by *mandamus* the proper remedy to vacate the commission of Bonner, who was elected by the new Justices, and commissioned by the Governor?   From the record in this case, it appears that the respondent, Bonner, was the acting Clerk of the Court of Ordinary of the County of Jones, under a commission from the Governor of this State.   He was in possession of the books and papers appertaining to the office, and exercising the duties thereof under a *prima facie* title; he was the officer, *de facto*, and one of the objects of the *mandamus* was, to inquire into the *validity* of the respondent's title to the office, and to vacate the same.   In our judgment, the relator had another specific, and much more appropriate remedy, to try the validity of the respondent's title to the office which he was exercising, by an information in the nature of a *quo warranto*.   In *The King vs. The Mayor of Colchester*, (2  *Term Rep.* 259,) it was held, that a *mandamus*, to admit a Recorder, should be refused, because there was a Recorder, *de facto*, and the party had another remedy by *quo warranto*, though both of them claimed under the same election.   In *The State vs. Delnesseline*, (1  *McCord's Rep.* 52,) it was held, that an information in the nature of a *quo warranto* may be filed against an officer who holds a commission under the authority of the State.   In *The State ex relatione of Meade vs. Dunn*, (1 *Minor's Ala. Rep.* 46,) the Court ruled, that a *mandamus* would not lie on behalf of one claiming an office, when another held the commission, and was in the exercise of the duties of the office, and that *quo warranto* was the proper remedy.   In *The People vs. The Corporation of New York*, (3 *John. Cases*, 79,) it was decided, that when a person is in office, by *color of right*, the remedy is not by *mandamus* to admit another having lawful claim, but by information in the nature of a *quo warranto*.   From the facts of this case, as the same appear on the record before us, it is our

judgment, that the relator ought to have proceeded by *quo warranto* in the first instance against Bonner, the respondent, and obtained judgment of *ouster* against him, upon the inquiry by what authority he held and exercised the duties of the office of Clerk of the Court of Ordinary ?   That upon such inquiry being had, and judgment of *ouster* obtained, vacating his claim or title to the office, and the legality of the relator's election to the office being established by the final judgment of a Court of competent jurisdiction, then for the relator to apply to the Governor for a commission, which we cannot permit ourselves to doubt, would have been promptly issued to him, for the reason that such judgment of a Court of competent jurisdiction as to the validity of the rela- tor's election to the office, and his right to a commission, would afford to the Executive Department the most conclusive and satis- factory evidence of the fact, that the relator was the individual duly and legally elected to the office in question.   Having obtain- ed his commission from the Governor, and the *prima facie* title of the respondent to the office having been vacated by the judg- ment of the Court upon the *quo warranto*, the relator would be entitled to the possession of the books and papers appertaining to the office, and a clear right to exercise the duties thereof, and en- joy its emoluments.   Should the Court of Ordinary, however, refuse to permit him to receive into his custody and possession the books and papers appertaining to the office, and refuse to permit him to exercise the duties thereof, as pointed out by law, (which we cannot presume would have been the case,) then the relator would, in our judgment, be entitled to a *mandamus*, directed to the Court of Ordinary, requiring it to admit him into the posses- sion of the books and papers of the office, and into the full en- joyment of the rights and privileges thereof.   An objection was urged on the argument to the course we have indicated, by the counsel for the relator, because the remedy would be imperfect and inadequate, inasmuch as the Governor could not be compell- ed, by *mandamus*, to issue a commission to the relator, in case of his refusal to do so.   The presumption of the law is, that every officer of the Government will do his duty, and we cannot and will not, for a moment, indulge the presumption that the Chief Magistrate of the State will not cheerfully and promptly perform each and every duty enjoined upon him by law; but we appre- hend, so far as *individual* rights are concerned, the position assum-

ed on the argument cannot be sustained, either by principle or authority, in this country. In England, it is true, the law ascribes to the King, in his political capacity, absolute *perfection*—the maxim there is, that " the King can do no wrong;" but that maxim is not applicable to the Chief Magistrate of a republican State. The right of sovereignty here is in the people, and not in the executive authority of the State. All the power and authority of the executive officer of the State, is derived from the people—they have, by their Constitution and laws, delegated it to him, and defined his duties. Every officer, from the highest to the lowest, in our government, is amenable to the laws of his country, for an injury done to individuals, either by a violation of them, by acts of commission, or refusing to do that which the laws enjoin upon him as a duty. When the voice of the people speaks in the form of a legislative enactment, all are bound to obey the mandate ; and the people have ordained and established the proper tribunals to enforce obedience to their will, for the protection and security of individual rights. In all cases where, by the Constitution and laws of the State, the executive officer is vested with the legal *discretion* to do or not to do any particular act, he is not amenable to judicial process; for if he errs in his judgment, or exercises his discretion improperly, his acts can only be examined politically ; but when the laws of the State require a *specific* duty to be performed by him, and individual rights depend upon the performance of that duty, the individual who may be injured by a refusal to perform such duty, enjoined by law, has the right, in our judgment, to resort to the proper tribunals of his country for a remedy. The distinction is between those executive duties, delegated by the Constitution and laws, in which the officer may properly exercise a *discretion*, and those duties which are merely *ministerial*, and in the performance of which no discretion is delegated to the officer. With regard to the former class of duties delegated to the Executive, the Courts have no power or authority to interfere with or control in any manner whatever; but with regard to the latter class, when the act or duty to be performed does not require the exercise of any *discretion* on the part of the Executive, and he is made by the law merely the *ministerial* agent, to perform certain duties in behalf of the people, then he may be required to perform such duties as required by law, at the instance of a citizen, whose rights are dependent on the per-

formance of such duty, by resorting to the appropriate remedy for that purpose.

This identical question was elaborately discussed and decided, in *Marbury vs. Madison*, 1 *Cranch's Rep.* 137.

Chief Justice *Marshall*, in delivering the judgment of the Court in that case, speaking of the duties of the Executive officer of the United States, thus expresses himself—" But when the Legislature proceeds to impose on that officer other duties—when he is directed, *peremptorily*, to perform certain acts— when the rights of individuals are dependent on the performance of those acts—he is so far the officer of *the law*—is amenable to *the laws* for his conduct, and cannot, at *his discretion, sport away the vested rights of others."* The doctrine with regard to judicial interference with the duties of the Executive Department of the Government, underwent a most thorough and searching investigation in the case of *Kendall vs. The United States*, 12 *Peters' R.* 524. The whole Court were of the opinion, that a *mandamus* would lie against one of the executive officers of the Government to enforce the performance of a mere ministerial act.

Three of the Justices dissented from the opinion of the majority of the Court, on the ground, that the Circuit Court of the District of Columbia had not the power and jurisdiction conferred on it by Congress, to issue the writ of *mandamus ;* but as to the question whether the writ of *mandamus* could be issued to an executive officer, to compel the performance of a mere ministerial act required by law, the whole Court were unanimous.

The Act of 1799 declares that the Court of Ordinary shall appoint its own Clerk, who *shall be commissioned by the Governor.* *Prince*, 231.

The Governor has no discretion, as to the *appointment* of the Clerk of the Court of Ordinary. The law, however, declares, that when he is appointed by the proper appointing power under the law, the Governor *shall* commission him. When an individual is appointed Clerk of the Court of Ordinary, according to law, he has a vested right to the office and the profits thereof, and also has the legal right, when so elected, to have a commission from the Governor ; for the language of the Act is imperative : "*shall be commissioned by the Governor*." What is the usual evidence of the appointment of a Clerk of the Court of Ordinary, by the Justices thereof? The certificate of the appointment of a particular indi-

vidual to that office, duly certified by a majority of the Justices of the Court.    But suppose the question, as to the legality of the election, has underwent a judicial investigation before a competent tribunal, and the final judgment of a Court of competent jurisdiction declares that a particular individual was duly and legally elected to that office : for example, the judgment of the Court declares that Columbus Pitts was, on the second Monday in January, 1849, duly and legally elected Clerk of the Court of Ordinary of Jones County, for the ensuing two years, and such judgment should be regularly certified to the Governor, would not such judgment afford the highest evidence to the Executive department, as to who was legally appointed the Clerk of the Court of Ordinary of that County ? Would not the individual so declared to have been duly appointed Clerk, by such judgment, when properly certified to the Governor, be entitled, under *the law*, to his commission ? Would the Governor, under the law which declares the Clerk appointed by the Court of Ordinary, " *shall be commissioned by the Governor*," have any discretion as to the performance of the mere ministerial act of issuing the commission, in obedience to the mandate of the people, as declared in the form of a legislative enactment ? To say that the Executive officer of the State, on the supposed statement of facts, would be at liberty to refuse a commission to the individual legally declared to have been elected to the office of Clerk, would be to say that such officer was above the laws of the people ; that he had the right to exercise *despotic* power, regardless of the laws of the people; and in the language of Chief Justice *Marshall, at his discretion*, sport away the vested rights of individuals, secured and protected by the *laws of the land*.

The doctrine contended for, might meet with favor in monarchical and *despotic* governments, but cannot be sanctioned in a republican State, where the sovereign authority is vested in the people, who have the right to limit and prescribe the duties of their public officers, by laws of their own enactment.    This right of the people to enact laws prescribing *specific* duties to be performed by public officers, for the benefit of individuals or the community at large, would be entirely nugatory and inoperative, if there was no *remedy* provided to enforce obedience to them. Such a state of things does not, in our judgment, exist in this Government.

The appropriate remedy for the relator in this case being an information in the nature of a *quo warranto*, and not by *mandamus*, the judgment of the Court below is reversed on that ground.