THE STATE OF MISSOURI *ex rel.* ST. JOSEPH BRIDGE BUILDING COMPANY, Relator, *v.* JOHN SEVERANCE, MAYOR OF THE CITY OF ST. JOSEPH, Respondent.

1. *Railroad bonds — Subscription — St. Joseph Bridge Company —* Mandamus. — By the terms of the original subscription by the city of St. Joseph to the St. Joseph Bridge Company, the city agreed to deliver to the company bonds in separate installments of $50,000, one installment to be delivered upon the expenditure by the company of each successive $100,000 until the completion of the bridge. By a subsequent modifying ordinance fifty per cent. of the total amount subscribed was to be paid when called for by the company. *Held,* that the plain intent of the latter ordinance was that whenever the required amount was used in the building of the bridge, which would entitle the company to an additional installment of the bonds, they should be delivered, although that amount, or some of it, may have been derived from money arising from the city bonds theretofore transferred.

## Petition for Mandamus.

*W. P. Hall*, for relator.

It was because of the failure to secure money independent of the city subscription that the modifying ordinance was passed and the original subscription was changed. The city knew that relator could not get money from sources independent of the city, and hence modified its original subscription so that relator might be relieved from the necessity of raising money outside of the city subscription. In the face of these facts, for the city now to say that it intended that the relator should, under the modified subscription, be required to provide means independent of the city subscription, is to ignore the very purpose for which the modification was made. The true meaning of the city's subscription, as

modified, is this: that the city should issue $250,000 of its bonds on call, and that, whenever relator should expend on its bridge $100,000, no matter from what source derived, the city should issue to relator $50,000 more bonds, and so on until its subscription was exhausted. This is the cotemporaneous construction adopted by all parties whose duty it was to enforce the ordinances of the city.

*Jeff. Chandler*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

The petitioner applies for a writ of *mandamus* to compel the defendant, who is mayor of the city of St. Joseph, to deliver a certain amount of bonds on account of the subscription made by the said city to aid in the building and construction of the plaintiff's bridge.

There is no dispute about the power of the city to subscribe, and the facts in the case are agreed upon; and the only question is whether, upon a proper construction of the ordinances authorizing the subscription, and by the terms by which it was made, the plaintiff is entitled to the bonds demanded at this time.

The original ordinance empowering the mayor and council to subscribe for stock in the undertaking, provided that if two-thirds of the qualified voters of the city of St. Joseph, at an election to be held for that purpose, should assent to the subscription, then the mayor and council should without delay cause the bonds and coupons to be engraved at the expense of the city and deposited with the city treasurer; and when $100,000 should actually have been expended by the Bridge Company in the construction of the bridge across the Missouri river at St. Joseph, the mayor of the city should certify such fact to the city treasurer, and the treasurer should thereupon deliver to said Bridge Company, or its duly authorized agents, $50,000 of the said bonds of the city; and whenever an additional sum of $100,000 should have been expended, and shown in the manner provided by law, a like sum of $50,000 of the bonds of the city should be delivered to the company, and so in like manner should each additional install-

ment of $50,000 of the bonds of the city be paid, and upon the completion of the bridge the balance of the bonds, if any remained unissued, should be delivered to the company.

At the election held in pursuance of this ordinance 1,555 votes were cast for the subscription, and 25 votes against it.   An ordinance was then framed and passed by the city council, authorizing and directing the mayor, in the name of the city, to subscribe for 5,000 shares of the capital stock of the company, amounting to $500,000.   By virtue of the power the mayor made the subscription.   Afterward an ordinance was adopted making a proposition to modify the terms of the subscription, which provided that the city should pay fifty per cent. of said subscription in the bonds of the city, of the character specified in the prior subscription, upon calls, in such manner and in such proportions as should be determined by the board of directors of the company, in conformity to its charter and the laws of the State, and the balance of the subscription should be paid in the manner provided for in the original subscription.   This proposition was also carried at the election held for that purpose by a vote of 1,619 to 65.

In accordance with the authority thus given, an ordinance was passed making the modification, and the mayor acted in conformity therewith.   It is agreed that the parties have acted in pursuance of the modified terms, and a large proportion of the bonds have been duly delivered by the mayor to the company; but the last installment called for was refused.   This refusal was based on the ground that it did not appear that the sum expended was derived from other sources than the sale of city bonds, as contemplated in the first ordinance.   The point then arises for determination, whether the modified subscription required that it should be so raised.   Some object was had in view in modifying the first subscription.   It was that the great improvement which, as the vote shows, the citizens almost unanimously believed would conduce to their benefit, should not be stopped because the company had not succeeded in obtaining the requisite amount of funds elsewhere.   Hence half the amount of the whole subscription was advanced at once as the company needed it, and the balance was to be paid in installments when a certain amount

was laid out and expended upon the construction and building of the bridge. It seems to me that the clear intent was that whenever the required amount was used in the building of the bridge, which would entitle the company to an additional installment of the bonds, they should be delivered, although that amount, or some of it, may have been derived from the money arising from the city bonds. There is nothing in the ordinance directly sustaining any other view. The only requirement is that $100,000 shall be expended before the $50,000 shall be delivered. But no mention is made of the source whence the $100,000 shall come. The requiring of the expenditure was intended as a guaranty of the good faith of the company. This was the cotemporaneous construction placed upon the ordinance by the parties themselves, and on which they have acted, and upon which large and important interests have vested. Although this would not be controlling if the language was clearly the other way, yet in doubtful cases it is entitled to and should receive weight. I think that when the plaintiff made its proof as required, that it had expended the necessary sum, although it did not appear that it was derived from a source other than the sale of the city bonds, then the mayor should have delivered the additional bonds demanded.

A peremptory writ will therefore be ordered. Judge Bliss concurs. Judge Adams absent.