## JOHN FRENCH *vs.* DAVID COWAN and others.

### Androscoggin.     Opinion June 9, 1887.

*Lewiston city marshal.     Mandamus.     Practice.     Special Stat. 1880, c. 293.*
*Quo warranto.*

Chapter 293 of the private and special laws of 1880, entitled "An act to promote the efficiency of the police force of the city of Lewiston," is to be regarded as amendatory of the original act of incorporation, and is to be construed in accordance with the true intent and meaning of the legislature as evidenced not only from the language of the particular act, but also from the act of incorporation which it sought to amend.

One of the objects sought to be attained by the amendment, besides a modification in the manner of appointment, was, that the terms of office of city marshal were to consist of consecutive periods of two years each, commencing with the beginning of the municipal year as provided in the city ordinances, and following each other in regular order, the one commencing when the other ends, instead of annual terms of one year each as before the passage of the act.

*Mandamus* is not an appropriate remedy to try the title to an office as against one actually in possession under color of law.

Where a person is in the actual possession of an office under an election or a commission, and is thus exercising its duties under color of right, the validity of his election or commission cannot, in general, be tried or tested on *mandamus* to admit another, but only by an information in the nature of *quo warranto.*

*William L. Putnam and George C. Wing,* for plaintiff.

We regard this case as fully covered by the opinion of the Justices in 61 Maine, 601. There is no question as to any officer of the United States holding for a term of years, whether his term commences at the expiration of a previous term, or at the death of a previous incumbent, or on his removal. In either case the successor holds for the full term named in the statute. This is the settled practice, and the law was so expressed in the case of the navy agent. Opinions Attorney General, Vol. 2, p. 333.

The relations between them are in no way in the nature of contract. Even the salary could not be recovered on that theory, and can be sued for in assumpsit only on the ground of an implied assumpsit. *Farwell* v. *Rockland*, 62 Maine, 296.

It is said in *Andrews* v. *King*, 77 Maine, 230, that the city marshal "has other than municipal duties." See *Commonwealth* v. *Swasey*, 133 Mass. 538 ; *Shaw* v. *Macon*, 21 Ga. 283.

In *Philadelphia* v. *Rink*, 4 Eastern Rep. 642, an action for salary brought by an officer who had been "counted out," the court said : "It is no answer to say that he did not then take the oath or give the bond." He was denied the privilege of doing either.

It is stated that mandamus will not lie except where there is a clear, legal right, and the court in *Townes* v. *Nichols*, 73 Maine, 517, has used very effective language on this point.

It was long ago determined in *Commonwealth* v. *Dennison*, 24 Howard, 66, as follows : "It is equally well settled that a mandamus in modern practice is nothing more than an action at law between the parties, and it is now regarded as a prerogative writ." This was reaffirmed in *Hartman* v. *Greenhow*, 102 U. S. 675.

We are unable to understand the full applicability and force in Maine and Massachusetts of the language so commonly used, that mandamus only lies where there is a clear, legal right, in view of the fact of the elaborate and difficult questions of law which were settled in Strong's case, 20 Pick. 484. *Putnam* v. *Langley*, 133 Mass. 204 ; *Williams* v. *Co. Com.* 35 Maine, 345 ; *Baker* v. *Johnson*, 41 Maine, 15 ; *Smyth* v. *Titcomb*, 31 Maine, 272, and other cases which we might cite.

Moreover, while it is doubted whether mandamus is the proper remedy for a person claiming office, who has never been in office, it is held that it is the proper remedy, under the circumstances like those at bar, in High on Extraordinary Remedies, § § 46 and 49, and Dillon on Municipal Corporations, § 847.

It seems not improper in closing to cite the following from the expressions of Lord MANSFIELD in *Rex* v. *Barker*, Burrow's Reports, p. 1267 : "Mandamus," he says, "ought to be used on

all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one. Within the last century it has been liberally interposed for the benefit of the subject and advancement of justice."

*John B. Cotton, William H. Newell and Wilbur H. Judkins,* city solicitor, for defendants, cited upon the first point considered in the opinion : 1 Dillon, Mun. Corp. § 87 ; Cooley's Con. Lim. 194 ; *Mason* v. *McClave,* 99 N. Y. 89 ; *State* v. *Pearcy,* 44 Mo. 159 ; *Landers* v. *Smith,* 4 East, Rep. 933 (78 Maine, 212) ; *Holmes* v. *Paris,* 75 Maine, 561 ; *Baker* v. *Kirk,* 33 Ind. 521 ; *Trustees* v. *Erie,* 31 Pa. St. 515 ; *Goodwin* v. *Thoman,* 10 Kansas, 191 ; *People* v. *Weller,* 11 Cal. 87 ; *State* v. *Mebling,* 6 Ohio St. 43 ; *Chalmers* v. *Cook,* 20 Ohio St. 253 ; 16 Fla. 842, and cases cited ; 50 Maine, 607 ; 61 Maine, 601 ; *Blankley* v. *Winstanley,* 3 T. R. 28 ; *Rex* v. *Osborne,* 4 East, 337 ; *Mayor* v. *Long,* 1 Camp. 22 ; *Rex* v. *Bellringer,* 4 T. R. 316 ; *Rex* v. *Headley,* 7 B. & C. 496 ; 1 M. & R. 345 ; *Sherwin* v. *Bugbee,* 16 Vt. 439.

FOSTER, J. The controversy in this case arises in relation to the title to office of city marshal of the city of Lewiston, and a petition for mandamus is instituted against the mayor and aldermen, and Daniel Guptil, the present incumbent of said office. The petitioner claims under an appointment made by the mayor by and with the advice and consent of the aldermen, March 12, 1885. The defendant, Guptil, claims under a similar appointment made April 1, 1886. It being conceded that both appointments were made by the proper authorities, the controversy arises by reason of the contention of the petitioner that his appointment, although expressly purporting to extend only to April 1, 1886, was by operation of law for the term of two years from the date of such appointment and would not expire till March 12, 1887, and that consequently the appointment of Guptil during that time was unauthorized and void. Guptil, at the time of his appointment, took possession of the office and was recognized as the lawful city marshal, and has ever since been acting as such.

Inasmuch as the question presented, if we are to decide it upon its merits, becomes one of statutory construction, it will be necessary briefly to examine the act of incorporation of the city, as well as the subsequent enactment of 1880, entitled " An act to promote the efficiency of the police force of the city of Lewiston."

By an examination of section four of the city charter, it will be found that all subordinate officers were to be elected and appointed annually by the city council for the ensuing year, on the third Monday of March or as soon thereafter as might be convenient; that all officers should be chosen and vacancies supplied for the current year, except as therein otherwise provided; and that all the subordinate officers and agents of the city should hold their offices during the ensuing year, and till others should be elected and qualified in their stead, unless sooner removed by the city council.

Thus the tenure of office provided by this section was for the current year.

Section eighteen authorized the appointment of a city marshal by the mayor and aldermen in the manner provided in the section before named; constituted such marshal chief of police, and specified his duties.

It is also provided by said charter that the city may ordain and publish such acts, laws and regulations, not inconsistent with the constitution and laws of this state, as shall be needful to the good order of the city.

In accordance with the express authority with which the city was thus invested, certain ordinances were duly ordained and published,— the twenty-first section of which provided that all police officers should hold their office until the last day of March next succeeding their appointment.

And here it may be stated as a fact about which there is no dispute, that since the incorporation of the city it has been the custom pertaining to the administration of police for the term of office of city marshal to expire on the last day of March and to begin on the first day of April in the respective years in which terms of said office expire and begin, not only under the original

act of incorporation, but also since the special act in relation to promoting the efficiency of the police went into operation in the spring of 1880.

Inasmuch, therefore, as that act provided that the city marshal should hold his office for the term of two years, the subsequent appointments were made on April 1, 1880, 1882 and 1884. Although several appointments were made from April 1, 1884, to the time when the petitioner was appointed, none of them received the advice and consent of the aldermen till the appointment of the petitioner, March 12, 1885.

It is at this point that the present controversy arises. It is insisted by the petitioner that a city marshal duly appointed in accordance with said act to succeed one whose term has fully expired, has by the express provisions of the act a definite and individual term of office of two full years from such appointment which cannot be abridged either by the act of the mayor or of the aldermen, and whether made at the commencement of the municipal year or any time thereafter.

On the other hand, it is claimed in defence that by a proper legal interpretation of the act when read along with the act of incorporation, as necessarily it must be, the term of a city marshal appointed to succeed one whose term has expired, is to be reckoned, for the purpose of ascertaining its duration, from the first day of April next succeeding the prior term, and that the person thus appointed is entitled to hold his office only to the expiration of two years from that date, notwithstanding there may have been an interval of time of greater or less extent between the expiration of the prior term and the date of his appointment.

In arriving at a correct conclusion in determining which of the foregoing positions is correct, we must be guided by the established rules pertaining to the construction of statutes — that like a will or contract it is to be read and construed as a whole, recourse being had to all its parts rather than to any particular clause where the meaning is doubtful, or where by giving a particular clause full effect it would conflict with other clauses. And in the construction of statutes it is held to be the duty of

courts to execute all laws according to their true intent and meaning; that intent, when collected from the whole and every part of a statute, must prevail, even over the literal import of terms, and control the strict letter of the law, when the latter would lead to possible injustice and contradictions. *State* v. *Mayor of Laporte*, 28 Ind. 248; *Holmes* v. *Paris*, 75 Maine, 561, and cases there cited.

Hence, the act of 1880 is to be read and construed not as standing alone, but in the light of the instrument which it sought to amend. That instrument is the act of incorporation; and only so much thereof is altered or repealed as is inconsistent with the act in question. This act in express terms changes the manner of appointment of the city marshal, deputy marshal and policemen. Formerly the appointment was the joint act of the mayor and aldermen; by the amendment, these appointments are vested in the mayor, the confirmation in the aldermen. The tenure of certain offices is changed. The act provides that " the city marshal shall hold his office for the term of two years, and the *remainder* of the police force shall hold their office for the term of three years, providing, however, that the first year after this act shall take effect, one-third in number, as near as may be, of said police force, shall be appointed for the term of one year; one-third in number, as near as may be, shall be appointed for the term of two years, and one-third in number, as near as may be, shall be appointed for the term of three years, and there shall be appointed each year thereafter one-third in number, as near as may be, of said police force."

It is evident, when we consider the language of the amendment in connection with the act of incorporation, that one of the objects to be attained, besides a modification in the manner of appointment, was that the terms of office of city marshal were to consist of consecutive periods of two years following each other in regular order, the one commencing when the other ends, instead of annual terms of one year each as before the passage of this act.

The purport of the statute in question is to promote the efficiency of the police force of the city. That force consists of

the marshal, deputy marshal and policemen. It was also the design of the statute that the terms of the policemen should consist of periods of three years, following each other in like consecutive order as those of the city marshal. The tenure of their office was so arranged that one-third of their number, as near as may be, were to be appointed each year, thus preserving the efficiency of the force. It is admitted that the police year in practice ever since the adoption of the city charter, has begun on the first day of April, and that since the passage of this statute the office of city marshal has been filled in separate and distinct terms of two years each, these terms commencing on the same day in April as the police year. The same paragraph which designates the terms of office of the remainder of the police also specifies the tenure of office of the city marshal. That office is intimately associated with and forms a part of the police department, the marshal being chief of police and pos-sessing all the powers and exercising all the duties appertaining to constables of towns. It partakes more of the character of a municipal office commencing at the beginning of the municipal year, than of those offices which, like judges and registers of probate and judicial officers, are entirely independent of municipal affairs. In the latter class the terms are fixed and positive to be sure, when no vacancy occurs, but in case of any vacancy the constitution provides otherwise for the commencement of such terms. The constitution in express terms provides that all *judicial* officers shall hold their respective offices for a definite term "from the time of their respective appointments." The rule applicable in such cases cannot properly be applied in the construction of a statute the provisions of which may be controlled by the true intent and meaning of the law makers, as evidenced from all its parts and the object sought to be attained. *Opinion of the Justices,* 61 Maine, 602 ; 50 Maine, 608 ; *Hale* v. *Brown,* 59 N. H. 555 ; *People* v. *McClave,* 99 N. Y. 89.

If we were to give any other construction to this statute in relation to the commencement and duration of the terms of office of the marshal and the policemen, the terms of service of the appointees might soon become such as to entirely destroy the

force of the provision that one-third, as near as may be, should be appointed each year. The results of any other construction may properly be anticipated, and if those results should be found to be anomalous, unjust, or even inconvenient, it is a legitimate and strong argument against such construction, and it might well be presumed that the legislature did not intend any such results. *Landers* v. *Smith,* 78 Maine, 213.

Thus the case of *State* v. *Mayor of Laporte,* 28 Ind. 248, was a proceeding to determine the right to an office. The city charter provided that only one councilman, of the two from each ward, should be elected every two years, for a term of four years. It was contended that the terms were four years whether from a general election or a special election, and that they were not necessarily distinct and consecutive with periods of two years intervening. But the court held otherwise, saying: "If the provision that 'all officers elected at any special election shall hold their offices until the next general election on the first Tuesday in May,' is held to include councilmen, it must result, that from special elections to fill vacancies occurring in that office, the two councilmen· from the same ward will often be elected at the same general election, for the full term of four years, and regularly thereafter at the same date, thus defeating the object of the legislature, which was to avoid an entire change in the representation of any ward at any regular election."

In the case before us, the statute, it is true, does not designate any definite point of time from which the terms of the several offices therein mentioned shall commence. Yet the evident purpose of the statute requires, for the police force at least, that a definite time be fixed from which the several terms shall begin to run, and when so fixed that the individuality of such terms be adhered to, and that, as in the case last cited, they follow each other in consecutive order. The act of incorporation expressly provides when the terms in relation to all subordinate officers shall begin. It provides that the city council shall annually, on the third Monday in March or as soon thereafter as convenient, elect and appoint for "the ensuing year." It provides that "all

officers shall be chosen and vacancies supplied, for the current year." And may not this be fairly understood as meaning the year commencing with the "third Monday in March or as soon thereafter as convenient?" Here, then, is a time designated for the commencement of the municipal year. The statute of 1880 does not, either expressly or by implication, change the commencement of that year. An ordinance, moreover, was existing at the date of the passage of the statute, providing that all police officers should hold their office until the last day of March next succeeding their appointment.

We cannot presume that the legislature intended to disturb, further than was necessary, the existing order of things, or to change the already existing provisions in regard to the beginning of the terms of service in force when this act was passed, and in no way repealed by it. Not only the ordinances ordained and published prior, as well as subsequent to this enactment, recognize the commencement of the municipal year as we have stated, and definitely fix the first day of April as such commencement. These ordinances do not appear to be inconsistent with the constitution and laws of the state, or with the charter which contains a general grant of power to pass all such by-laws as may be necessary to the well being and good order of the city. Cooley, Cons. Lim. 194; Dillon, Munic. Corp. (2d ed.) § 250.

The construction we have here given in relation to the commencement and duration of the terms of these offices, has been received and acted on by all parties interested, from the adoption of this statute to the time when this controversy arose. Such, also, appears to have been the understanding of the petitioner, as well as those who made and confirmed the appointment, as is shown not only by the records of the board of mayor and aldermen, wherein his nomination and confirmation are stated to be "for two years from April 1, 1884, to April 1, 1886," but also from the language of the petitioner in his official bond, in which he states that he "has been appointed and elected city marshal of the city of Lewiston for the term of two years, beginning on the first day of April, A. D. 1884, and ending April 1, A. D. 1886."

While such understanding or custom can have no room for operation where the language of the enactment is plain and the legislative intent is clear upon the face of it, yet it may not be without its importance in aid of a proper construction of a charter or statute if the language be uncertain or doubtful.

"In construing statutes applicable to public corporations," remarks REDFIELD, J., in *Sherwin* v. *Bugbee*, 16 Vt. 444, " courts will attach no slight weight to the uniform practice under them, if this practice has continued for a considerable period of time." It was upon this principle that the court in *State* v. *Severance*, 49 Mo. 401, held " that the cotemporaneous construction of a city ordinance adopted by all parties interested in its enforcement, although not controlling, is, in doubtful cases, entitled to great weight." *State* v. *Cook*, 20 Ohio St. 259.

In the examination of the question before us, we have looked directly to the legal merits of the case. But there is another ground which is decisive against the petitioner and brings us to the same conclusion.

The office to which the petitioner seeks to be restored is actually filled by another, claiming under a legal appointment, admitted and sworn and exercising the functions of the office under color of right. In such case, the appropriate remedy of the petitioner in the first instance, if entitled to any, is by *quo warranto*, and not by *mandamus* alone. In this case, the petitioner is virtually attempting to oust an actual incumbent, and to place himself in an office the title to which is in controversy and which cannot be tried in a proceeding of this kind. The general and well nigh universal rule is that *mandamus* is not an appropriate remedy to try the title to an office as against one actually in possession under color of law. The decided weight of authority, both in the English and American courts, is in support of this doctrine.

In Dane's Abridgement, the rule is thus stated: " But if the office be already full by the possession of an officer *de facto*, no writ will be granted to proceed to a new election, until the person in possession has been ousted on proceedings in *quo warranto*."

Judge DILLON, in his work on municipal corporations, after :stating the English rule as above given, and that the same is :generally recognized to be the law in this country, says: "We .have before seen that it is the doctrine of the English law, quite :generally adopted in this country, that where a person is in the actual possession of an office under an election or a commission, .and is thus exercising its duties under color of right, that the validity of his election or commission cannot, in general, be tried ·or tested on a *mandamus* to admit another, but only by an information in the nature of *quo warranto.*" § § 674, 678, 679, :680, 716. The same doctrine is more emphatically laid down in High on Ex. Leg. Rem. § 49, and he asserts that the rule is ·established by an overwhelming current of authority that *man-.damus* will not lie to compel the admission of another claimant nor to determine the disputed question of title to an office, where .it is already filled by an actual incumbent who is exercising the .functions of the office *de facto* and under color of right. In such ·cases, the party complaining and desirous of an adjudication ·upon his alleged title and right of possession, must assert his rights by the only proper, efficacious and speedy remedy, and that is an information in the nature of a *quo warranto.*

A careful examination of the decisions both of the English and American courts will not fail to convince the most doubting mind that the general current of authority runs in the same direction, and that the exceptions to the rule are rare and not well founded. A few of the very ·many authorities bearing directly upon this rule are given,— enough when examined to authenticate the assertion that the rule is too well settled to be denied. *King* v. *The Mayor of Winchester*, 7 A. & E. (34 E. C. L. 81); *The Queen* v. *The Mayor of Derby*, 7 A. & E. (34 E. C. L. 135); *King* v. *The Mayor of Oxford*, 6 A. & E. 348 (33 E. C. L. 89); *Frost* v. *The Mayor of Chester*, 5 E. & B. 538, (85 E. C. L. 536), COLERIDGE, J: "A mandamus goes only on the supposition that there is no one in office, for the purpose of restoring a party to office or to cause an election to be held." *The King* v. *The Mayor of Colchester*, 2 T. R. 259; *The Queen* v. *Phippen*, 7 A. & E. 966 (34 E. C. L. 263);

*People* v. *New York*, 3 Johns. cases, 79 ; in this case the court held : "Where the office is already filled by a person who has been admitted and sworn, and is in by color of right, a mandamus is never issued to admit another person," and it is there laid down that the proper remedy, in the first instance, is by information in the nature of a *quo warranto* by which the rights of the parties may be tried. *People* v. *Stevens*, 5 Hill, (N. Y.) 629 ; *People* v. *Lane*, 55 N. Y. 219 ; *In re Gardner*, 68 N. Y. 467 ; *Duane* v. *McDonald*, 41 Conn. 517 ; *Wood* v. *Fitzgerald*, 3 Oregon, 568 ; *Underwood* v. *Wylie*, 5 Ark. 248 ; *Bonner* v. *The State*, 7 Ga. 473 ; *People* v. *Detroit*, 18 Mich. 338 ; *Brown* v. *Turner*, 70 N. C. 93 ; *Denver* v. *Hobart*, 10 Nev. 28 ; *Merideth* v. *Supervisors*, 50 Cal. 433. "Mandamus will not be issued to admit a person to an office while another is in under color of right," *State* v. *Auditor*, 36 Mo. 70 ; "Mandamus will not lie to turn out one officer and to admit another in his place," *People* v. *Matteson*, 17 Ill. 167 ; *People* v. *Head*, 25 Ill. 325 ; *Hill* v. *Goodwin*, 56 N. H. 456 ; *Exparte Harris*, (Alabama), 14 Am. Law Reg. (N. S.) 646 ; *McGee* v. *State*, 1 West. Reporter, 467, (Indiana) ; *Ellison* v. *Raleigh*, 89 N. C. 125. "By *quo warranto* the intruder is ejected. By mandamus the legal officer is put in his place," *Prince* v. *Skillin*, 71 Maine, 366.

That there have been exceptions to the rule is true. But upon what principle the exceptions have been founded, where there has been an actual incumbent, exercising the functions of the office, and being in under color of right, the decisions themselves fail to afford any satisfactory answer. In Maryland and Virginia, the courts have held that in such cases mandamus would lie. Thus in *Dew* v. *The Judges of the Sweet Springs Dist. Court*, 3 Hen. & Munf. 1, it was held that mandamus was the best remedy. So in *Harwood* v. *Marshall*, 9 Md. 83, the court of appeals of Maryland, came to the conclusion that resort to *quo warranto* as preliminary to mandamus was not necessary on the grounds of delay growing out of the use of the process, citing in support of its decision the case of *Strong. Pet.* 20 Pick. 484, a case more generally referred to as an exception to the rule than any other authority. But an examination of that case shows the fact that it.

was mandamus to the board of examiners to issue a certificate of apparent election to the petitioner, although, as the court there say, he might then be obliged to resort to *quo warranto* to test the title to the office. A distinction is there made between the cases where applications had been made to be admitted to an office by proceedings on mandamus, and the case there decided, where the petitioner only sought for a *certificate* of his election, like the case of *Marbury* v. *Madison*, 1 Cranch, 168-9, and *The King* v. *The Mayor of Oxford*, 6 A. & E. 349 (33 E. C. L. 89), where it was said that the certificate was only one step towards the completion of the title. The court also in *Strong's case* admitted that the two processes might be necessary to enable the petitioner to get possession of the office,— the one to establish the legality of his election, the other to set aside that of the incumbent, and that although they were independent of each other, they might have been applied for at the same time and proceeded *pari passu*. The court *arguendo* claimed that there are authorities in support of the doctrine that mandamus is the appropriate remedy where there is an actual incumbent acting *de facto*, but the decision of the court is not based upon that ground, and is not authority to the extent claimed in *Conlin* v. *Aldrich*, 98 Mass. 558, where it is referred to. The general tenor of the decisions from Massachusetts recognize and adopt the rule rather than the exception to it. *Attorney General* v. *Simonds*, 111 Mass. 256. It is a fundamental principle that mandamus can be used only to compel the respondent to perform some duty which he owes to the petitioner, and can be maintained only on the ground that the petitioner has a present, clear, legal right to the thing claimed, and that there is a corresponding duty on the part of the respondent to render it to him. If therefore, as in the case at bar, the two persons are claiming the title to office adversely to each other, the respondent being in possession and exercising the duties pertaining to that office *de facto* under color of right, mandamus will not lie to compel the admission of the petitioner, or to determine the disputed question of title.

It is the opinion of the court upon the best reflection we have

been able to give to the questions presented in this case, that upon neither branch is the petitioner entitled to prevail.

> *Writ denied, with only one bill*
> *of costs for respondents.*

PETERS, C. J., WALTON, DANFORTH and LIBBEY, JJ., concurred.

HASKELL, J. I dissent from the reasoning of the opinion. The act of March 16, 1880, provides that the city marshal of Lewiston shall be appointed by the mayor, by and with the advice and consent of the aldermen, and "shall hold his office for the term of two years," and that "all acts and parts of acts inconsistent with this act are hereby repealed."

The language of this act, touching the tenure of the marshal, is substantially the same as that in the constitution, declaring the tenure of various state officers. Art. VI, Sec. 4, provides, that "all judicial officers shall hold their respective offices for the term of seven years from the time of their respective appointments." Sec. 5, "Justice of the peace and notaries public shall hold their offices during seven years. if they so long behave themselves well." Sec. 7, "Judges and Registers of Probate shall hold their offices for four years commencing on the first day of January next after their election." Sec. 8, "Judges of Police and municipal courts shall hold their offices for the term of four years."

In case of vacancy in any of these offices, it has been the custom for the new officer to hold for a full term.

This court declared, that a person, elected to the office of Register of Probate made vacant during the term, should hold for the full term of four years. Opinion of the Justices 61 Maine, 602.

The act of 1880 is "clear and unambiguous," and provides that "the marshal shall hold his office for the term of two years." No good reason exists for departing from the plain meaning of the statute, especially, when it expressly repeals all acts inconsistent with its provisions. Its title purports "to promote the efficiency of the police force," which is not likely to flow

from short terms and frequent changes. The marshal neither appoints his deputies, nor any part of the police force, and when appointed, he should hold the full term of two years.

I concur in the result, upon the ground that mandamus does not lie to eject an officer *de facto*, performing his duties under color of right.