## AKERMAN *v.* BOARD OF SCHOOL COMMISSIONERS OF CARTERSVILLE.

The remedy of madamus may be invoked to compel the board of school commissioners of the City of Cartersville to give recognition to the rights of a member thereof whom his associates have, without legal authority, attempted to remove from office.

Argued July 6, — Decided August 11, 1903.

Petition for mandamus.    Before Judge Fite.    Bartow superior court.    May 5, 1903.

*James B. Conyers,* for plaintiff.

FISH, P. J.    The plaintiff in error, Walter Akerman, presented to the judge of the superior court of Bartow county a petition wherein it was prayed that a mandamus nisi be issued against the Board of School Commissioners of Cartersville.    The allegations of fact upon which this petition was based were, in substance, as follows:    On the first Monday in April, 1898, petitioner was elected by the Mayor and Aldermen of Cartersville as a member of that board, for a term of four years.     On the first Monday in April, 1902, the mayor and aldermen " again assembled in said city for the purpose of electing two persons to fill the vacancies occurring on said board, . . occasioned by the expiration of the terms of office of " petitioner and another member, James W. Knight, and they and  James C. Wofford " were voted  for as candidates  to fill said two vacancies."    The mayor and aldermen declared, as the result of the election, that petitioner and Wofford were duly elected, and commissions were accordingly issued to them in the usual way.    " There was no notice of any contest of said election ever given, and no contest whatever of said election was ever in fact instituted by said James W. Knight, or any other person."    Petitioner and Wofford " each entered upon the discharge of their duties as members of said board," and petitioner " continued in the discharge of his duties as a member of said board . . until the 2nd day of October, 1902, when said mayor and aldermen, at a regular meeting, [but] without any authority of law for so doing, adopted a certain resolution," of which the following is a copy:    " Whereas, at an election held on the 7th day of April last by the Mayor and Aldermen for the purpose of electing two members of the Board of Education of the Public Schools of the City, Mr. J. C. Wofford and Mr. Walter Akerman were each declared to be elected, and certificates issued to each of them by the Clerk of Council; later, however, it was ascertained that Mr. Akerman had not been elected, and that Jas. W. Knight, a candidate at said election, had received a majority of the votes cast, and was duly and legally elected: Therefore be it resolved by the Mayor and Aldermen, that the certificate issued to Mr. Akerman be, and the same is hereby, de-

clared null and void.    Resolved 2nd, That the Clerk of Council
be, and is hereby, directed to issue a certificate of election to James
W. Knight as a member of the Board of Education of the Public
Schools of the City of Cartersville." On October 3, 1903, "which
was the day following the adoption of the resolution aforesaid, . .
the said board of school commissioners did, without any authority
of law for so doing, adopt a resolution offered by F. M. Ford, who
was the mayor of said city and also a member of said board," as
follows: "Whereas, Mr. Walter Akerman, a former member of
this Board, whose term of office expired on the 7th day of April
last, is now and has been since the expiration of his term occupy-
ing a place on this Board without authority, therefore be it resolved
by the Board of Education, in regular session assembled, that here-
after the rights and privileges of a member of this Board be and
the same are hereby denied to the said Walter Akerman.    Re-
solved 2nd, That Jas. W. Knight, who was a candidate at the elec-
tion on the 7th of April, received a majority of the votes cast, and
was duly and legally elected, and is entitled to his place on the
Board of Education." To this action on the part of the board
"petitioner sued out a petition for certiorari, which was sanctioned
by the court on October 25th, 1902;" the writ issued on October
31st; due notice was served on the board of school commissioners,
and a hearing was had on January 28, 1903, at which time the
court passed an order dismissing the certiorari proceedings. To
this order petitioner excepted and took the case by writ of error to
the Supreme Court, wherein the case is still pending. His bill of
exceptions was duly filed on March 30th. Subsequently, when
the board met on its "regular meeting night in April, 1903, . .
petitioner presented himself at said board meeting and demanded
that he be permitted to participate in the meetings of said board
as a member" thereof, and "put said board upon notice that he had
obtained a supersedeas to the" judgment whereby his certiorari
proceedings had been dismissed.    "But John W. Akin, the presi-
dent of said board, refused to allow [him] to participate in the de-
liberations of said board," as a member of the same, "and also re-
fused to submit to the board for its decision the question as to
whether [he] should be allowed to participate in the deliberations
of said board of school commissioners, but arrogated to himself,
without lawful warrant or authority," power to pass upon the rights

of petitioner and exclude him from participation, as a member of the board, in its affairs.

The judge of the court below declined to grant the mandamus nisi for which Akerman prayed in his petition, and he thereupon sued out a bill of exceptions to this court, assigning error upon the refusal of the judge to order the writ to issue.    In our opinion, Akerman has just cause of complaint.    It is true, as stated in Spelling on Injunctions and other Extraordinary Remedies (vol. 2 of 2d ed. § 1577), that "if the power of removal [from office] rests in the discretion of any other officer or body of officers, the exercise of such discretion will not be controlled" by the courts, "since the officers charged with the duty of determining the sufficiency of the causes of removal and the fitness of the party removed to continue in office are presumed best qualified to pass upon these questions," unless by statute their power be limited to removal "for due cause."    But it is clear that, under the act establishing a board of school commissioners for the City of Cartersville, that body is wholly without authority to remove, even for due cause, any of its members from office.    See Acts of 1888, pp. 323–326.    By an amendatory act, the mayor and aldermen of that city were empowered to elect the school commissioners, and to fill vacancies occurring "in said board by death, resignation, removal, or otherwise;" but no authority was conferred upon the mayor and aldermen to remove from office a member of the board for cause, or, after holding an election to fill a vacancy and declaring the result thereof, to rescind its action on the ground of mistake as to the number of votes cast for the candidate declared to be elected, or to oust him for any other reason.    See Acts of 1895, pp. 167–8.    So, it will be seen, the board of school commissioners could not justify their attempt to expel Akerman on the idea that the mayor and aldermen had power to remove him and appoint his successor, as they undertook to do when they passed the resolution of October 2, 1902, quoted above.

It is equally obvious, we think, that the writ of mandamus was the remedy whereby the unauthorized action of the board of school commissioners could be brought to judicial cognizance and correction.    In other jurisdictions it has been held, that "Mandamus may issue to compel a county board of supervisors to recognize as a member of their body a city official made such by the city char-

ter," and that "the writ also lies to permit the petitioner to act as a member of the school committee of a town, when he has been excluded by the respondents, one of whom is wrongfully permitted to act in his stead." See 2 Spell. Inj. & Extr. Rem. (2d ed.) § 1578, and cases cited; also, Short on Mandamus, * 273 et seq. Our Civil Code, § 4867, expressly declares that "All official duties should be faithfully fulfilled, and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." The decision of this court in the case of *Waring* v. *Georgia Medical Society*, 38 *Ga.* 608, is controlling upon the question whether or not the remedy of mandamus may be invoked in a case such as the one now in hand. The Georgia Medical Society was, as pointed out by Chief Justice Brown (page 628), not a mere private association, but a corporation duly chartered "for the purpose of lessening the fatality induced by climate and incidental causes, and improving the science of medicine," the society being "invested with certain powers, and charged with certain duties to be performed for the benefit of the public." Dr. Waring was one of the corporators. Without any legal justification, a majority of the members of the society voted to expel him therefrom, and refused to allow him to participate in its affairs. This court accordingly held (page 608) that he was "entitled to a peremptory mandamus commanding and compelling the society to restore him to all his rights and privileges as a corporator."

The case of *Bonner* v. *Pitts*, 7 *Ga.* 473, is not, upon its facts, similar to the present case. There it was held: "Where a person is in office under a *prima facie* title thereto, by *color of right*, the remedy to admit another, having a lawful claim, is not by mandamus; but the appropriate remedy is by information in the nature of a *quo warranto.*" It appeared that the Justices of the inferior court of Jones county, after their successors had been elected but before they qualified, "proceeded to elect a clerk of the court of ordinary for the ensuing two years, and Columbus A. Pitts, the acting clerk, was duly elected. Upon the afternoon of the same day, the newly elected justices, after being qualified and commissioned, proceeded to elect a clerk," and selected Richard W. Bonner as Pitts's successor. "Certificates of the election were sent by each

court to the Governor of the State, who sent a commission to Bonner, the clerk elected by the new court, to whom Pitts delivered up the books and papers of the office, and who proceeded to discharge its duties." Subsequently Pitts sought, by way of mandamus proceedings, to test the validity of the election which resulted in the selection of Bonner, to whom he had voluntarily surrendered the office. Clearly, under these circumstances, quo warranto proceedings should have been instituted against Bonner. In the case now before this court, it does not appear either that Akerman has ever surrendered his office to James W. Knight, or that the latter has ever assumed to discharge the duties thereof. The action is not directed at Knight, but against the board of school commissioners, certain members of which have attempted, without any shadow of right, to exclude Akerman, who has never been actually ousted, from participating in the deliberations of the board and discharging his duties as a member thereof. By mandamus his fellow-members may, and should, if the allegations of his petition be supported by proof, be summarily required to give recognition to his rights in the premises.

In *Terrell* v. *Georgia R. Co.*, 115 *Ga.* 104, we held, following prior adjudications which were controlling, that the writ of mandamus would not lie to compel the railroad company to make a transfer on its books of stock which the petitioner had acquired by transfer from the persons to whom it was originally issued. But this decision does not militate with that now announced. "While," as was pointed out in the opinion delivered by the writer in that case, " a railroad company is a quasi-public corporation, and, as such, owes many important duties to the public, the duty of transferring its stock from one person to another is no more a duty which it owes to the public than is the duty of the officers of a bank to transfer its stock from a vendor to a purchaser." Our Civil Code, § 4868, declares that "Mandamus does not lie as a private remedy between individuals to enforce private rights." When a private corporation refuses to make on its books a transfer of stock, as it should do, the party aggrieved may, if necessary to his protection, appeal to a court exercising equitable jurisdiction to enjoin the corporation from taking any action prejudicial to his rights, or recognizing any one else as the owner of the stock.

The board of school commissioners for the City of Cartersville

is in no sense a purely private corporation, but a public body created for the purpose of exercising certain powers with a view to subserving the welfare of the inhabitants of that city and, incidentally, that of the State at large. This end can not be accomplished unless the members of the board work together, as harmoniously as may be, as it is unquestionably their legal duty to do.

*Judgment reversed. By five Justices.*