EDWARDS *v.* CENTRAL OF GEORGIA RAILWAY CO.
CENTRAL OF GEORGIA RAILWAY CO. *v.* EDWARDS.

1. Where, in a suit against a railroad company by an employee for personal injuries, the plaintiff's evidence shows that the injury was the result of accident, or that, if there was any negligence, the plaintiff was not free from fault, it is not error to grant a nonsuit.

2. Where in the same case each party sues out a bill of exceptions independent of the one sued out by the other party, and by consent the questions made by the two bills of exceptions are argued together, and this court by an affirmance of the judgment on one of such bills of exceptions disposes finally of the case so that a reversal of the judgment complained of in the other could be of no benefit to the plaintiff in error therein, the questions made by such latter bill of exceptions will not be considered.

Argued July 25, — Decided August 14, 1903.

Action for damages. Before Judge Seabrook. Effingham superior court. November 11, 1902.

*Twiggs & Oliver*, for plaintiff. Duty of employee to obey conductor's orders : 71 *Ga.* 406, 413, 417, 419–22; 80 *Ga.* 436 (7) ; 93 *Ga.* 244; 112 U. S. 377. Jumping from train under real or supposed imminence of danger: 64 *Ga.* 635, 640–1; 74 *Ga.* 745–9

(6 and 8); 83 *Ga.* 347 (1); Id. 672–4.  When negligence not too
remote: 92 *Ga.* 659–62; 105 *Ga.* 102.  Where brakeman in
obeying order had his foot caught in switch, recovery sustained:
94 *Ga.* 571.  Case should have been submitted to the jury: 66
*Ga.* 170; 69 *Ga.* 619; 74 *Ga.* 385; 83 *Ga.* 674; 87 *Ga.* 202;
Id. 631; 95 *Ga.* 547.

*Lawton & Cunningham,* for defendant, commented on cases
cited above, and cited 68 *Ga.* 699; 70 *Ga.* 566; 85 *Ga.* 197; 104
*Ga.* 764.

SIMMONS, C. J.  Suit was brought by Edwards against the Cen-
tral of Georgia Railway Company, for damages for personal inju-
ries received by him while in the employment of the defendant as
brakeman upon a freight-train of the defendant.  Upon the
trial the jury found for the plaintiff, and the defendant brought
the case to this court, which reversed the judgment refusing to
grant a nonsuit.  See 111 *Ga.* 528.  After the plaintiff had
amended his petition, the case was again tried.  On this trial the
plaintiff's evidence showed that he was injured while serving as
brakeman on a freight-train composed of about fifty cars.  This
train was behind schedule time and was overtaken by a passenger-
train.  Both trains were going west, and the freight-train was ap-
proaching a siding.  The east switch of this siding had been tem-
porarily removed, and, in order for the freight-train to take the
siding, it was necessary for the train to be taken past it and then
backed into the west switch.  Just before reaching this latter
switch, the plaintiff, who was standing on the tenth or twelfth car
from the engine, was directed by the conductor to leave the train
so as to change the switch.  The train was moving seven or eight
miles an hour, and the conductor, who was several cars back of
the plaintiff, gave this direction by signals.  The plaintiff descended
the ladder on the side of the car and jumped to the ground.  His
foot slid into the frog of the switch and he sustained very severe
injuries.  In getting down plaintiff saw no dangerous obstruction;
the train was moving and he did not know just where he would
land, but he apprehended no danger save from a collision of the
two trains.  Just before jumping, plaintiff saw the switchstand on
the other side of the track and thought he had passed the frog of
the switch.  It was so dusty that plaintiff could not see clearly, but
he could see as well as the conductor and could see everything the

conductor could see.    Plaintiff thought he had passed the side-track and had clear ground to land on; but as to this he made a miscalculation.    Plaintiff thought getting off was all right at the time, but was signaled so fast and so hurriedly that he had not time to think it over.    If the conductor had not ordered it, plaintiff would not have left the train.    He did not, however, think that he would jump into danger.

Upon the close of the plaintiff's evidence the court, on motion, granted a nonsuit.    To this ruling the plaintiff excepted.    The defendant also excepted, by a separate and independent bill of exceptions, (1) to the refusal of the court, upon the entry of the remittitur from this court, to enter an order which should operate as a grant of the motion for nonsuit made on the first trial, and (2) to the allowance of the amendment to the plaintiff's petition.

1.    We are clear that there was no error in granting the nonsuit. It appears that upon the trial below the plaintiff announced that the only allegation of negligence upon which he relied was that wherein he alleged that the conductor was negligent in ordering the plaintiff to jump from the train.    We think that this order was not negligent.    The train was not moving rapidly, its speed being seven or eight miles an hour, and the conductor could not have foreseen that plaintiff would be endangered by leaving the train.    The evidence does not authorize a finding that an injury would naturally follow jumping from the train under such circumstances.    Another element supervened — that the plaintiff jumped at such time and place that his foot caught in the frog.    Except for the presence of the frog at that exact place, the plaintiff would probably have received no injury.    The coincidence of the plaintiff's landing at the exact point at which the frog was located would seem to have been an accident to which no negligence on the part of the conductor contributed.    Even if it be conceded, however, that the conductor was negligent in giving the order, still the nonsuit was right; for then the plaintiff was also negligent, and, being an employee, could not recover.    In the first place the evidence does not show that a collision with the passenger-train was imminent.    It was broad daylight, and the track was straight.    The passenger-train was plainly visible to those on the freight-train and it does not appear that the freight-train was hidden from the view of those on the passenger-train.    The freight-train was mov-

ing forward at a rate of seven or eight miles an hour. The evidence does not show that at this time the speed of the passenger-train was greater; indeed, it does not negative the idea that those in charge of the passenger-train had slowed up in order to allow the train in front to take the siding. Plaintiff's actions must, therefore, be considered without reference to the doctrine that an emergency may produce emotions which will excuse a lack of discretion on the part of the person endangered. Whatever may have been the obvious danger of jumping from the train, that danger was just as apparent to the plaintiff as to the conductor. It was no more negligent, under the evidence, for the conductor to give the order than it was for the plaintiff to obey it. There is no evidence that the conductor knew more of the situation than did the plaintiff, or that he was more experienced in such matters. The plaintiff thought he had passed the switch, and believed he could jump safely and land on clear ground. The conductor does not appear to have had any reason to believe to the contrary, except such reasons as were equally within the knowledge of the plaintiff. The jury could not lawfully have found from the plaintiff's evidence that the conductor was negligent in giving the order, without also finding that the plaintiff was negligent in obeying it, and that his negligence, no less than that of the conductor, contributed to the injury. Plaintiff was an employee of the defendant, and such negligence upon his part would preclude a recovery by him. In the cases relied upon by the plaintiff in error the negligence was not in giving the orders, but in some other particular which made obedience to the orders result in injury. They would have applied in the present case, if it had been shown that the defendant was negligent in having an unblocked frog at the switch, and the plaintiff had relied for a recovery upon the negligent failure to block the frog, in connection with the order to jump. As matter of fact there was no effort to show that the defendant was negligent in having an unblocked frog, and the plaintiff's case rested solely upon the allegation of negligence in the order of the conductor. For these reasons, the cases cited for him on this point have no application, and the court was right in granting the nonsuit.

2. The bill of exceptions of Edwards and that of the railway company were by consent argued together in this court. The af-

firmance of the judgment awarding the nonsuit on the second trial makes it entirely unnecessary to decide the questions made by the company's bill of exceptions; for a reversal thereon could not in any way benefit the company. The questions therein made will not be considered; for their decision would be utterly useless in this case. Indeed, the brief for the company states that " If the judgment of the court below, granting the motion for nonsuit on the second trial of the case, *should be reversed, then* our bill of exceptions . . would be vital." This would seem to indicate a willingness to abandon the bill of exceptions in the event of an affirmance of the judgment complained of by Edwards.

*In one case, judgment affirmed ; in the other, writ of error dismissed.    All the Justices concur.*