PATTEN *et al. v.* MILLER.

124

Nos. 13217, 13218. APRIL 10, 1940.

Powell, Goldstein, Frazer & Murphy, MacDougald, Troutman & Arkwright, C. A. Williams, A. N. Durden, H. W. Nelson, Copeland & Dukes, and Will Stallings, for plaintiff in error.

J. A. Branch, Thomas B. Branch Jr., J. P. Knight, S. F. Memory, and Franklin & Eberhardt, contra.

BELL, Justice. W. L. Miller filed a suit for the writ of mandamus, naming as defendants Lawson L. Patten, Herman Watson, and James L. Gillis. Under the law there may be only three members of the State Highway Board. The plaintiff alleges that he is a member and chairman, and that the defendant Patten claims to be a member and chairman, and that the defendants Watson and Gillis claim to be members, respectively. The object of the suit was to require recognition of the plaintiff as a member and chairman. The defendants demurred generally and specially to the petition, which demurrer the court overruled. The plaintiff demurred specially to parts of the defendants' answer, which demurrer the court sustained, with leave to amend. After an amendment to the

answer was filed and allowed, the court entered final judgment on the pleadings in favor of the plaintiff, to which judgment and the antecedent rulings the defendants excepted. The following is a detailed statement of the petition, with response of the defendants shown in brackets:

"1. The defendants herein are the following: (1) Lawson L. Patten, who is a resident of said [Lanier] County; (2) Herman Watson, who is a resident of Paulding County, Georgia; and (3) James L. Gillis, who is a resident of Treutlen County, Georgia. [Admitted.]

"2. Petitioner was duly appointed as a member of the State Highway Board of Georgia and as chairman of said board on the 3rd day of March, 1937, by the Governor of the State of Georgia, and his appointment was duly confirmed by the Senate of the State of Georgia. ['For want of information these defendants can neither admit nor deny the allegations in paragraph 2.']

"3. Petitioner has, since he qualified as such member and as such chairman and since he was commissioned as such, acted and continued to act as such member and as such chairman. [Denied.]

"4. The defendant Lawson Patten is, and since December 2nd, 1939, has been, acting as a member of said State Highway Board, claiming to fill the membership on said board for the term ending February 1st, 1945. ['Answering paragraph 4 these defendants say that on the second day of December, 1939, Lawson L. Patten was appointed by the Governor of Georgia as a member of the State Highway Board, to fill a vacancy on that board for a term of six years ending February 1, 1945, and has since been performing the duties as a member of said board.']

"5. Defendant Herman Watson is acting as a member of said State Highway Board, and is occupying, and claiming to occupy, the membership ending February 1st, 1941. ['Answering paragraph 5 these defendants say that Herman Watson was, on the second day of December, 1939, appointed a member of the State Highway Board of Georgia, to fill a vacancy on that board, and commissioned for a term ending February 1, 1941. He has since been performing the duties of a member of the board.']

"6. On information and belief, petitioner alleges that the defendant James L. Gillis is claiming to be a member of said board, and is attempting to act as such member. ['Answering paragraph

6 these defendants say that on the second day of December, 1939, the defendant James L. Gillis was appointed by the Governor of Georgia as a member of the State Highway Board of Georgia, to fill a vacancy then existing on said board, and commissioned for a term of office ending February 1, 1941. Said James L. Gillis has since been performing the duties of a member of said highway board.']

"7. The facts with respect to the membership of the said Gillis and that of Patten are, according to petitioner's best information and belief, as follows: ['Paragraph 7 of the petition requires no answer, but with reference thereto these defendants say that the facts respecting the membership of the defendant Gillis, and that of the defendant Patten, are as herein set forth.']

"8. Up to and prior to December 2nd, 1939, James L. Gillis was a member of said board, holding the membership which expires on February 1st, 1941. ['The facts alleged in paragraph 8 are substantially true.']

"9. Up to and prior to December 2nd, 1939, defendant Herman Watson was acting as a member of said board, he having been appointed on or about March 3rd, 1937, to membership on said board which ended February 1st, 1939; and prior to December 2nd, 1939, the said Watson had not been reappointed, and no successor has been appointed to the said Watson as to said membership. ['The facts alleged in paragraph 9 are substantially true.']

"10. On December 2nd, 1939, the said defendant Herman Watson and the said James L. Gillis appeared at the office of the Governor in the State Capitol; and the Governor, in the presence of the said Gillis, administered an oath to the said Watson as a member of said State Highway Board for the term ending February 1st, 1941 (this being the term which up to that time had been held and occupied by the said Gillis). ['Answering paragraph 10 these defendants say that the defendant Watson and the defendant Gillis were appointed to membership on the State Highway Board as hereinbefore set forth, on December 2nd, 1939, and on that date did qualify and receive commissions from the Governor.']

"11. At the same time, on December 2nd, 1939, the said Gillis took an oath before the Governor as a member of said State Highway Board for the term ending February 1st, 1943. [Admitted.]

"12. The term ending February 1st, 1943, is the term which petitioner has occupied since March 3rd, 1937, and which he still occupies; and there was no vacancy in said membership; and therefore the said Gillis could not legally have been appointed to said term. [Denied.]

"13. Petitioner is advised, and on information and belief alleges, that the legal effect of the foregoing conduct on the part of the said Gillis was that he in effect resigned or vacated the membership which he, up to December 2nd, 1939, had held and occupied as a member of said board; that is, the membership ending February 1st, 1941. ['Paragraph 13 alleges no facts, but merely states a legal conclusion of the petitioner, and requires no answer.']

"14. However, petitioner alleges that, for the reasons set forth above, the said Gillis is a proper party to this proceeding. ['Paragraph 14 alleges no facts, but merely states a legal conclusion of the petitioner, and for that reason requires no answer.']

"15. Since said 2nd day of December, 1939, and up to the present time, said defendants have refused, and continue to refuse, to recognize petitioner either as a member of said board or as chairman thereof. ['Answering paragraph 15 these defendants say that the laws of Georgia make provision for a highway board consisting of three members, and that on the second day of December, 1939, and since that date, said board has consisted of these defendants and no other members. The plaintiff is not a member of said board, and the defendants are under no duty to recognize him as such. If they should undertake to do so, the State Highway Board of Georgia would then consist of four members instead of the three provided by law.']

"16. Said defendants have, since said 2nd day of December, 1939, purporting to act in the capacities aforesaid; that is, as members of said board, and, ignoring petitioner both as a member of said board and as chairman thereof, purported to carry on the duties and functions by law devolving upon the said State Highway Board of Georgia, to the exclusion of petitioner, both as a member and as chairman of said board. ['Answering paragraph 16 these defendants say that on the second day of December, 1939, and since that date, the State Highway Board of Georgia was composed of these defendants and of them alone, and that they have

since that date performed the duties of members of the State Highway Board. The plaintiff is not a member of said board, and has no right to participate in the performance of the duties of the board.']

"17. Under the law, there can be but three members of the State Highway Board of Georgia; and petitioner is a member of said board and entitled to perform the duties devolving by law upon a member thereof. ['Answering paragraph 17 these defendants admit that under the law there can be but three members of the State Highway Board of Georgia. The remainder of said paragraph is denied.']

"18. Petitioner is chairman of said board and is entitled, as such, to perform the duties and receive the emoluments incident to said office. [Denied.]

"19. Under the law of Georgia, the two members of said State Highway Board, other than petitioner, are under the duty to recognize petitioner as a member of said board, and to allow him to perform the duties incident to said membership, and to participate as a member in the performance of the duties devolving upon the State Highway Board of Georgia. [Denied.]

"20. Under the law, the two members of the said State' Highway Board, other than petitioner, are under the duty to recognize petitioner as chairman of said board, and to allow him the opportunity to perform the duties incident to said office, and to participate, as such, in the functions and duties devolving by law upon said highway board. [Denied.]

"21. As hereinbefore alleged, the said defendants by their conduct are preventing petitioner from performing and fulfilling his duties as a member and as chairman of said State Highway Board, to the detriment of the public." [Denied.]

The plaintiff prayed: "That a mandamus nisi be granted, as provided by law, directed to said defendants, and to each of them, requiring them and each of them to show cause at a time to be stated therein why a mandamus absolute should not be granted, requiring the defendants who are members of said State Highway Board to recognize petitioner as a member of said board and to accord him the opportunity to act as such member, and requiring them to recognize petitioner as the chairman of said board, and to accord him the opportunity to perform the duties incident to said

office. That upon the return of said mandamus nisi the court grant a mandamus absolute, requiring said defendants, who are members of said State Highway Board, to recognize petitioner as a member of said board and to accord him the opportunity to act as such member, and requiring them to recognize petitioner as the chairman of said board and to accord him the opportunity to perform the duties incident to said office."

After responding to each of the allegations of the petition as indicated above, the defendants further answered as follows:

"22. For further answer these defendants show that on the second day of December, 1939, there was a vacancy on the State Highway Board of Georgia, occasioned by the fact that the plaintiff, who had at one time acted as a member of said board, had resigned, and his resignation had been accepted by the Governor.

"23. That on said second day of December, 1939, there was a vacancy on the State Highway Board of Georgia, occasioned by the fact that the plaintiff, who at one time had acted as a member of said board, had abandoned his office and had ceased to perform the duties thereof.

"24. On said second day of December, 1939, there was a vacancy on the State Highway Board of Georgia, occasioned by the fact that the plaintiff, who at one time had acted as a member of said board, had voluntarily put himself in a position of ineligibility to hold any public office created under the laws of Georgia, by becoming the holder of an office of profit or trust under the Government of the United States, to wit: a member of the Advisory Committee of the Atlanta Agency of the Reconstruction Finance Corporation.

"25. For further answer these defendants say that if the plaintiff ever held any such office as chairman of the State Highway Board of Georgia, the same became vacant, and was vacant on the second day of December, 1939, by reason of the facts hereinbefore set forth.

"26. Defendants say that the Governor of Georgia, in the exercise of his executive duty as Governor, on the second day of December, 1939, ascertained that such vacancy on the State Board of Georgia existed, and thereupon filled the same as he was required by the constitution of [and] the laws of Georgia so to do, in the manner hereinbefore set forth."

The demurrer to the petition was as follows:

"1. The petition sets forth no cause of action, and alleges no facts sufficient to entitle petitioner to the relief sought.

"2. The petition, when considered in connection with facts which are within the judicial knowledge of the court, affirmatively shows that the sole question at issue is that of title to the office of member and chairman of the State Highway Board of Georgia, which can not be tried by mandamus.

"3. Petition as a whole is demurred to specially for the reason that it is too vague and indefinite to support a mandamus absolute, in that it is not alleged which of the defendants are under the legal duty of recognizing the plaintiff as a member and chairman of the State Highway Board.

"4. There is a misjoinder of parties defendant, in that it does not appear from the allegations of the petition that the defendants are under the legal duty to jointly do the acts sought to be compelled.

"5. The petition as a whole is demurred to generally and specially, for the reason that it seeks to compel the defendants to perform a duty alleged to be required of them by law, without alleging that they are in fact the officers of the State, and as such under a legal duty to do the act or acts sought to be compelled.

"6. The facts alleged in the petition, when considered in connection with facts which are within the judicial knowledge of the court, affirmatively show that the plaintiff is not a member or chairman of the State Highway Board of Georgia.

"7. The petition as a whole is demurred to generally and specially, for the reason that the duty alleged to be required by law of each of the defendants is a several duty required of such defendant, if at all, by virtue of the fact that he is a public officer of the State, and performance of that duty can not be required of any other defendant. For this reason there is a misjoinder of parties defendant, and the suit should be dismissed.

"8. The facts alleged in the petition, when considered in connection with other facts within the judicial knowledge of the court, affirmatively show that the office of member of the State Highway Board of Georgia, to which the petitioner alleges he was appointed, is now occupied by another person who claims the title thereto, and that the position to which petitioner alleges he was appointed is not vacant."

The plaintiff demurred to parts of the answer, as follows:

To paragraph 22, on the grounds: (a) The same alleges a mere conclusion, and no facts from which the court can determine whether in fact the plaintiff ever legally resigned. (b) The defendants should be required to allege when, how, and in what manner, whether expressly or by implication, it is claimed the plaintiff resigned, and all the facts upon which the defendants base the claim that the plaintiff resigned as member and chairman of the highway board. To paragraph 23, on the grounds: (a) The same is a mere conclusion, and no facts are alleged to support the conclusion. (b) The defendants should be required to allege all of the facts upon which they claim that plaintiff has abandoned his office. (c) They should be required to allege how and in what manner and upon what facts it is claimed the alleged abandonment resulted. (d) They should be required to allege what duties he neglected, or ceased to perform, and when he failed to perform any duties of the office of member and chairman of the board, and all of the facts upon which they base this allegation, so that the court can determine whether such facts amount to an abandonment.

To paragraph 24, on the grounds: (a) The same is too vague and indefinite, and is a mere conclusion. (b) The defendants should be required to allege what the duties of the alleged office of member of the Advisory Committee are; what the term or tenure thereof is; what emoluments are attached thereto; whether there is any oath of office required as to same; by whom the office was created, and by whom the appointment was made; and all the facts with respect thereto, in order to enable the court to determine from the facts whether there is any such "office."

The foregoing special demurrers having been sustained with leave to amend, the defendants offered the following amendment as an addition to paragraph 24 of the original answer:

"Pursuant to acts of Congress of the United States, U. S. C. A. title 15, section 604, the Board of Directors of Reconstruction Finance Corporation, prior to November 27th, 1933, the exact date being not known to defendants, by resolution or other appropriate action, which method is unknown to defendants, of said board, created or established the Advisory Committee of the loan agency of the corporation located at Atlanta, Georgia. The duty of plain-

tiff as a member of said committee was to assist the corporation in administering the provisions of the Reconstruction Finance Corporation Act and other laws pertaining to the corporation, and particularly to sit with other members of said committee and to examine applications made to said corporation for loans, and to examine the nature, value, and character of collaterals pledged or offered to be pledged to secure the repayment of such loans applied for, and thereupon to recommend to the corporation and its authorities whether such applications for loans should or should not be approved and loans made or denied thereon according to such recommendations. Defendants are advised and believe that membership on said committee carried no compensation other than actual expense incurred by its members in the discharge of their duties, and required no oath of office, and that membership on said committee is for an indefinite duration."

The defendants "refused and declined to further amend to meet the other grounds of the demurrer." The court, being of the opinion that there was no issue of fact for determination by a jury, entered judgment in favor of the plaintiff, as follows:

"It appearing to the court that there is no issue of fact in the case for trial by a jury under the pleadings in this present case, after rulings of the court thereon on the demurrers filed thereto and under the facts of which this court will take judicial cognizance, and it further appearing to the court, under such pleadings and facts of which the court will take judicial cognizance, that the defendant James L. Gillis is not a member of the State Highway Board and that the defendants Herman Watson and Lawson L. Patten are members thereof, it is ordered that mandamus absolute be and the same is hereby granted, requiring the defendants Herman Watson and Lawson L. Patten, as members of said board, to recognize the plaintiff, W. L. Miller, as a member of said board, and to accord him opportunity to act as such member, and requiring the defendants Herman Watson and Lawson L. Patten, as members of said board, to recognize the plaintiff, W. L. Miller, as chairman of said board and to accord to him the opportunity to perform the duties thereof. And the defendants Herman Watson and Lawson L. Patten as members of said board are hereby ordered and directed to recognize plaintiff, W. L. Miller, as a member of said board and to accord to him the opportunity to act as

such member, and also to recognize the plaintiff, W. L. Miller, as chairman of said board, and to accord him the opportunity to perform the duties thereof." The defendants excepted, assigning error on the final judgment and on each of the antecedent rulings. It appears from the brief of the plaintiffs in error that on December 2, 1939, the Governor passed an order as follows:

"Whereas section 89-101 of the Georgia Code of 1933 provides, among other things, that persons holding any office of profit or trust under the government of the United States (other than that of Postmaster and officers of the Reserve Corps of the United States Army, Navy, or Marine Corps), or of either of the several States, are held and deemed ineligible under the law to hold any civil office, and the existence of any of these facts shall be sufficient reason for vacating any office held by such persons; and

"Whereas section 89-501 of the Georgia Code of 1933 provides, in part, that all State offices shall be vacated by virtue of any officeholder abandoning the office and ceasing to perform its duties, or either; and

"Whereas the said section 89-501 of the Code also provides that offices in the State shall be vacated by resignation, when accepted; and

"Whereas it has been made to appear to me that Honorable W. L. Miller is holding the office of chairman of the State Highway Board of Georgia and also the office of member of the State Highway Board of Georgia under appointment by me, while at the same time, and as a matter of fact before his appointment, he was and is holding an office of profit or trust under the government of the United States; and

"Whereas it has been made to appear to me that the said W. L. Miller has ceased to perform the duties of the office to which I appointed him, namely chairman of the State Highway Board and member of the board, and instead of performing such duties is using said office and the prestige, power, and influence thereof to stir up issues, create strife inimical to the best interest of the State, and advance his selfish political interests in an effort to build a gubernatorial campaign for himself; and

"Whereas on different occasions the said W. L. Miller, as chairman and member of the highway board aforesaid, has stated to me, as Governor of Georgia, that if I desired to accept his resignation I could do so and that he would 'go home;' therefore

"It is ordered: that the office of chairman of the State Highway Board of Georgia and that of member of the State Highway Board of Georgia, heretofore held and occupied by Honorable W. L. Miller for the term ending February 1, 1943, be and the same are hereby vacated; and a vacancy in said office is hereby declared and found to exist. It is further ordered: that the resignation aforesaid of W. L. Miller be and the same is hereby accepted. And it is so ordered, this the second day of December, 1939.

"E. D. Rivers, Governor."

It is asserted in the briefs on both sides that this court should take judicial cognizance of this order and of various other orders and matters appearing of record in the Governor's office, under date of December 2, 1939, including: (1) An executive order finding that James L. Gillis, who formerly served as a member of the State Highway Board for a term ending February 1, 1941, had resigned that term. (2) That Herman Watson was then holding over under an appointment for a term which had expired February 1, 1939. (3) Orders appointing Patten for a term ending February 1, 1945, as successor to Watson, and also appointing him as chairman of the board for the same term. (4) Order appointing Watson to a term ending February 1, 1941, to succeed Gillis, who had resigned; and appointing Gillis to a term ending February 1, 1943, to succeed the plaintiff, W. L. Miller, who as contended by the defendants "had vacated his office." (5) Commissions by the Governor to the various appointees accordingly.

Miller also filed against Patten an information in the nature of a quo warranto. The facts touching that case will be stated in the final division of the opinion, infra, in which both cases are considered.

Opinion of the Court.

On December 9, 1939, W. L. Miller filed a suit for the writ of mandamus, naming as defendants Lawson L. Patten, Herman Watson, and James L. Gillis. He alleges in his petition, that he is a member and chairman of the State Highway Board of this State; that there can be but three members of this board, but that each of the defendants is claiming membership, and since December 2, 1939, they have purported to act as members and to carry on the duties and functions devolving by law upon the board, to the exclusion of the plaintiff both as a member and as chairman;

that since that date the defendants have refused, and continued to refuse, to recognize the plaintiff in either capacity, but that it is the duty of the two members other than the plaintiff so to recognize him, and to allow him to perform the duties of such offices. He prayed for the writ of mandamus requiring the "defendants who are members of the said State Highway Board" to do so. The defendants filed a demurrer based on general and special grounds. The court overruled this demurrer, and the correctness of this ruling is the first question for determination.

This general question involves, of course, several constituent questions. As shown in decisions this day rendered in companion cases, there continues to be in this State such an office as chairman of the State Highway Board. The law contemplates that the State Highway Board shall consist of three members, one of whom shall be chairman. Ga. L. 1937, p. 906; Code, § 95-1603. The petition makes no express reference to any order or act of the Governor in reference to the plaintiff, but it appears from the briefs that several orders were passed by the chief executive on December 2, 1939, giving rise to this controversy; and it is insisted on both sides that this court should take judicial cognizance of all of these orders and other pertinent matters of record in the Governor's office. It appearing that the case was so tried in the court below without objection, we will here acquiesce in such mutual insistence of counsel, without actual decision upon the point. Thus considering the case, we have before us the several orders in question, just as though the plaintiff had attached copies of them to his petition as exhibits. This brings us to the initial order of December 2, 1939, as set forth in the preceding statement. This order shows upon its face that at the time it was being prepared, and immediately before it was passed, W. L. Miller was a member and chairman of the State Highway Board. This court also knows as a matter of public record that he had held these offices by appointment by the Governor, with confirmation by the Senate, since March 3, 1937, and that the terms for which he was appointed have not expired. (Georgia Senate Journal 1937, p. 1426); *Holder* v. *Anderson,* 160 *Ga.* 433 (4) (128 S. E. 181); *Abrams* v. *State,* 121 *Ga.* 170 (48 S. E. 965); *Bailey* v. *McAlpin,* 122 *Ga.* 616 (50 S. E. 388). The petition did not expressly challenge any statement contained in the Governor's order; and since the petition is being considered on

general demurrer, the question necessarily arises as to whether the order appears to be void upon its face; that is to say, taking every statement or recital *of fact* therein made to be true, was it of any force in law as against the plaintiff? If the order appears to be valid either as creating a vacancy or as showing a vacancy by acceptance of resignation or otherwise, the petition, considered in connection therewith, would have shown prima facie that the plaintiff had ceased to hold the office in question, and that the resulting vacancies were lawfully filled. In that case the demurrer should have been sustained. On the other hand, if the order appears to be wholly invalid for any purpose, the offices were not vacated, and as to this phase of the case the demurrer was properly overruled.

Under authority granted by the constitution, the Governor may by appointment fill actual vacancies in the offices of member and chairman of the State Highway Board, but he can not create a vacancy therein. Code, § 2-2614. This would necessarily involve removal of an incumbent, and this power does not exist in reference to these offices. The law in this respect has not been changed since the decision in *Holder* v. *Anderson,* supra, where it was held: "2. The Governor of this State has no inherent power to remove a public officer, and he can only do so where the power is expressly given or arises by necessary implication under the constitution or the statutes of the State; and where the constitution or statute authorizes appointment by the Governor, without any fixed tenure of office, the appointment is at the will of the Governor and may be revoked at his pleasure; but where the appointment is by the Governor under a statute which provides a fixed term for the office, the Governor has not the power of removal of an officer during the term for which he was appointed. 3. Upon a proper construction, the act approved the 18th day of August, 1919 (Acts 1919, p. 242), as amended by the act approved the 10th day of August, 1921 (Acts 1921, p. 199), provides for the office of chairman of the State Highway Board to be filled by appointment by the Governor, and that the appointees to such office shall have definite and fixed terms of office."

The order of the Governor which is here under consideration must be considered in reference to (1) ineligibility because of holding a Federal office, (2) abandonment, and (3) resignation. As to ineligibility because of holding a Federal office, the Code pro-

vides as follows: "The following persons are held and deemed ineligible to hold any civil office, and the existence of any of the following states of facts shall be a sufficient reason for vacating any office held by such person, but the acts of such person, while holding a commission, shall be valid as the acts of an officer de facto, viz.: . . 4. Persons holding any office of profit or trust under the Government of the United States (other than that of postmaster and officers of the Reserve Corps of the United States Army, Navy, or Marine Corps), or of either of the several States, or of any foreign State." Code, § 89-101. This section in like manner declares ineligible, among others, (1) "Persons who are not citizens of this State, and persons under the age of 21 years;" (2) "all holders .or receivers of public money of this State, or any county thereof, who have refused when called upon, or failed after reasonable opportunity, to account for and pay over the same to the proper officer;" (5) "persons of unsound mind, and those who, from advanced age or bodily infirmity, are unfit to discharge the duties of the office to which they are chosen or appointed;" (6) "those who have not been inhabitants of the State, county, district, or circuit for the period required by the constitution and laws of this State." A subsequent section provides, in part: "All offices in this State shall be vacated—2. By resignation, when accepted;"· and "7. By abandoning the office and ceasing to perform its duties, or either." Code, § 89-501. This section further provides that an office may be vacated (1) by the death of the incumbent; (3) "by decision of a competent tribunal declaring the office vacant;" (4) "by voluntary act or misfortune of the incumbent, whereby he is placed in any of the specified conditions of ineligibility to office, which shall operate from the time the fact is ascertained and declared by the proper tribunal." Since the Governor had no jurisdiction to create a vacancy and could only fill a vacancy which actually existed, his order finding and declaring a vacancy to exist is of no effect unless the facts recited by him were sufficient to establish such conclusion. See generally, in this ·connection, *Gray* v. *McLendon, 134 Ga. 224 (67 S. E. 859)* ; *McCants* v. *Layfield, 149 Ga. 231 (3) (99 S. E. 877)* ; *Daniel* v. *Citizens & Southern National Bank, 182 Ga. 384, 398, 401, 405 (185 S. E. 696)* ; *Talmadge* v. *Cordell, 167 Ga. 594 (146 S. E. 467)* ; *Williams* v. *MacFeeley, 186 Ga. 145 (3) (197 S. E. 225)* ; Hardie *v.* Coleman,

115 Fla. 119 (155 So. 129, 92 A. L. R. 988, note, 998) ; Hatton *v.* Joughin, 103 Fla. 877 (138 So. 392), s. c. 107 Fla. 850 (145 So. 174) ; Village of Kendrick *v.* Nelson, 13 Idaho, 244 (89 Pac. 755) ; Nagle *v.* Sullivan, 98 Mont. 425 (48 Pac. 2d, 995, 99 A. L. R. 321) ; Benjamin *v.* Helena Light &c. Co., 79 Mont. 144 (255 Pac. 20, 52 A. L. R. 33, note, 41) ; Weiss *v.* Ziegler, 327 Pa. 100 (193 Atl. 642, 112 A. L. R. 102) ; Heyward *v.* Long, 178 S. C. 351 (183 S. E. 145, 114 A. L. R. 1130, note, 1147) ; Sterling *v.* Constantin, 287 U. S. 378 (53 Sup. Ct. 190, 77 L. ed. 375) ; 12 C. J. 894, 895, §§ 393, 394, 398, 399 ; 34 C. J. 550, § 850 ; 15 R. C. L. 880, 881, §§ 358, 359 ; 22 R. C. L. 563.

Among the rights of citizens, as declared in the Code, are the right to hold office unless disqualified by the constitution and laws, and the right to appeal to the courts. Code, § 79-205. All citizens are entitled to exercise all their rights as such, unless specifically prohibited by law. § 79-206. So the right of a citizen to hold office is the general rule, ineligibility the exception ; and. therefore a citizen may not be deprived of this right without proof of some disqualification specifically declared by law. *Avery* v. *Bower,* 170 *Ga.* 202 (152 S. E. 239) ; *Overton* v. *Gandy,* 170 *Ga.* 562 (2) (153 S. E. 520). Compare *Herring* v. *State,* 114 *Ga.* 96 (39 S. E. 866).; *Rumph* v. *State,* 119 *Ga.* 121 (2) (45 S. E. 1002). According to the statute, Federal offices the holding of which will render a person ineligible do not include the office of postmaster and officers of the Reserve Corps of the United States Army, Navy, or Marine Corps, and the Governor's order does not show what Federal office the plaintiff Miller held at the time of receiving appointment as member and chairman of the State Highway Board, and for aught that appears *it might have been one of such excepted offices.* Accordingly, the order does not show ineligibility because of holding a forbidden Federal office.

Referring next to abandonment,—the order does not show a vacancy upon this ground. "In order to constitute an abandonment of an office, it must be total, and under such circumstances as clearly to indicate an absolute relinquishment; the determination of the question whether an officer has abandoned an office is dependent upon his overt acts rather than upon his declared intention, and the law will infer a relinquishment where the conduct of the officer indicates that he has completely abandoned the duties of the office."

46 C. J. 981, quoted with approval in *Parks* v. *Ash*, 168 *Ga*. 868, 871 (149 S. E. 207). The order did charge a gross misuse of the office of chairman of the State Highway Board, but mere misconduct in office does not constitute abandonment, and it affirmatively appears from the Governor's order that the incumbent had not vacated the office by any conduct amounting to "abandonment." *McDonough* v. *Bacon*, 143 *Ga*. 283 (84 S. E. 588). Moreover, this office could not be vacated by an order of the Governor based solely upon a finding that the plaintiff had abandoned it. This is true because the fact of abandonment must first be "ascertained and declared by the proper tribunal," and to say that the chief executive in that tribunal is to imply a power of removal where it does not exist. Until otherwise provided by law, the fact must be ascertained and declared in a judicial proceeding to which the incumbent is a party. Code, § 89-501 (4); *City of Macon* v. *Bunch*, 156 *Ga*. 27 (1 *d*) (118 S. E. 769); *Christopher* v. *State*, 21 *Ga. App*. 244 (94 S. E. 72); *Bunch* v. *Macon*, 29 *Ga. App*. 290 (3) (115 S. E. 40); *Walton* v. *Davis*, 188 *Ga*. 56 (2 S. E. 2d, 603); *Coleman* v. *Glenn*, 103 *Ga*. 458 (30 S. E. 297, 68 Am. St. R. 108). No such question was involved in *Jones* v. *Collier*, 65 *Ga*. 553, since only a money judgment based on default by a county treasurer was there under review, although the ordinary had declared the office vacant and had appointed another person to fill it temporarily. The instant case is also distinguished from *Compton* v. *Hix*, 184 *Ga*. 749 (193 S. E. 252), in which several special and general statutes had to be taken into consideration, including the Code, §§ 89-410, 89-9902, the latter being a criminal statute.

It is urged by counsel for the *defendant in error* that the foregoing rule as to the necessity of judicial determination would apply with equal force to an alleged ineligibility because of holding a prohibited Federal office at the time of accepting a State office. This question would involve a consideration of whether the provisions of paragraph 4 of section 89-501 should be construed as applying to section 89-101 (4), and the exact question, so far as we are aware, has never been decided by this court. We have given some consideration to it in this case; but in view of what has been ruled above as to the failure of the Governor's order to show the holding of a prohibited Federal office, we do not deem it necessary to make any ruling thereon at this time. See, in this connection,

Code of 1863, §§ 125, 131, both in the same article; *Brown* v. *Brown,* 184 *Ga.* 827, 830 (193 S. E. 754) ; *McWilliams* v. *Neal,* 130 *Ga.* 733 (61 S. E. 721, 14 Ann. Cas. 626) ; *Long* v. *Rose,* 132 *Ga.* 288 (64 S. E. 84) ; *Smith* v. *Lester,* 132 *Ga.* 517 (64 S. E. 478) ; *Casey* v. *McElreath,* 177 *Ga.* 35 (169 S. E. 342) ; Com. v. Livingston, 171 Ky. 52 (186 S. W. 916) ; Haymaker *v.* McCain, 22 N. M. 400 (163 Pac. 248, L. R. A. 1917D, 210) ; and other cases cited in editorial note in 100 A. L. R. 1186; 46 C. J. 974-975, §§ 120, 121, 122. Even in those jurisdictions where it is held that the Governor may at once make an appointment, it seems that the burden is on the appointee to take the affirmative for the purpose of recovering the office, if the incumbent refuses to vacate. 22 R. C. L. 439, § 63.

We next consider the question as to resignation. An office may be vacated, of course, by a resignation duly accepted; but does the order here show a resignation? The recital is that "on different occasions the said W. L. Miller, as chairman and member of the Highway Board aforesaid, has stated to me, as Governor of Georgia, that if I desired to accept his resignation I could do so, and that he would 'go home.'" This is not a statement that Miller had resigned, either conditionally or otherwise, or that he had made even a continuing offer to do so. At the most, it shows only that at different times in the past he had signified a then present willingness to resign, provided the Governor *then* desired that he do so; and this did not authorize future action by the Governor thereon. State *v.* Huff, 172 Ind. 1 (87 N. E. 141, 139 Am. St. R. 355) ; State ex rel. Hopkins *v.* Board of Education, 108 Kan. 101 (193 Pac. 1074). "A resignation of a public office, to be effective, must be made with the intention of relinquishing the office, accompanied by the act of relinquishment." 46 C. J. 979, § 132. "To constitute a complete and operative resignation of public office, there must be an intention to relinquish a part of the term, accompanied by an act of relinquishment." 22 R. C. L. 566, § 259. On the general subject see Young *v.* Ladeen, 104 Minn. 252 (116 N. W. 486, 16 L. R. A. (N. S.) 1058); Ryan *v.* Murphy, 30 Nev. 409 (97 Pac. 391, 18 L. R. A. (N. S.) 1210); State *v.* Fowler, 160 Ala. 186 (48 So. 985, 135 Am. St. R. 91) ; Wootton *v.* Berninger, 255 Ky. 451 (74 S. W. 2d, 932, 95 A. L. R. 213). The foregoing recital is followed by the statement that "the resignation aforesaid

. . is hereby accepted." This statement, of course, referred to and is dependent upon the recital. Where the right of a citizen to continue in office is involved and the question of resignation depends upon a mere inference to be drawn from recitals in an order of the Governor, where he has no power of removal, a vacancy is not established unless an inference to that effect is demanded by the facts so recited. Page v. Hardin, 8 Ben Monroe's Rep. (Ky.), 648, 671. Counsel for the plaintiffs in error contend, not only that the order showed the existence of a resignation, but that any finding of the Governor upon that question would be conclusive and not subject to judicial inquiry. In Page v. Hardin, supra, a similar contention was made, the Governor having decided and declared that a public office had become vacant by abandonment. The court said:

"The response relies upon this decision as conclusive of the question, and it becomes our duty to inquire whether it is conclusive as to the rights of the officer to whom it relates. The constitution (art. 3, sec. 10) confers upon the Governor the express power 'to fill up vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of their next session.' But this clause certainly gives no power to make a vacancy by declaration or judgment that one exists, or by granting a commission to fill one assumed to exist. There must be a vacancy before the power or duty of filling it arises. And although, having the power to act in a particular state of case, the Governor must decide for the determination of his own action whether and when the designated state of case exists, still the constitutional power of granting the commission, and therefore the legal validity of the act, is made to rest upon the fact of an actual vacancy, and not upon his opinion or judgment of the fact. To say that his opinion or judgment of the existence of a vacancy is to be the sole and conclusive test of the fact is to make him the sole and conclusive judge of all the acts and causes which may produce a vacancy, is to change a contingent into an absolute power, and must ultimately result in converting the power to fill a vacancy already existing into the power of creating a vacancy to be filled. Such a power, which would place within the uncontrolled discretion of the Governor, not merely the selection of the person to fill an office actually vacant, but the displacing of an officer under the form of filling a

vacancy, is not conferred by the clause in question, and is moreover inconsistent with those clauses which fix the tenure of office during good behavior, and which therefore give to the officer the right to hold according to that tenure. If the Governor may determine conclusively upon the existence of a vacancy, there is no security for this right, but by imputing to him an infallibility which belongs to no earthly officer or tribunal—which the constitution imputes to none, and which can not be regarded as the appointed guaranty of constitutional or legal rights. If further speculation be allowable on this point, it may be observed, that in deciding that there is a vacancy the Governor decides in favor of his own power to make a new appointment; that such a decision may be favored by the most earnest conviction that the public good will be advanced by it; and that if not subject to be misled by these considerations, he is still liable, where the question of vacancy is not determined by matter of record, but depends upon evidence or inference, to be imposed on with regard to the facts or mistaken as to the law involved in the question. Other tribunals, it is admitted, are also liable to err. But in the ordinary tribunals for the ascertainment of legal rights, the laws have provided important barriers against error, by the established rules of proceeding and of trial and judgment. And the privilege of every citizen to resort to these rules constitutes a most valuable safeguard to his rights. In the decision of the question of vacancy by the Governor, his investigation is directed by his own discretion, and there is no prescribed mode of trial which may insure the attainment of truth. As the decision may be made in the absence of the party concerned and without notice, so it may be founded upon false or forged testimonies, or upon inferences easily disproved. In the cases of Bruce v. Fox [1 Dana, 447], and the Jefferson Justices v. Clark [1 T. B. Mon., 86], supra, this court decided against the decision and act of the Governor, the very questions of the existence of a vacancy and of his right to make an appointment, as matter of law upon undisputed facts. And if the decision of the Governor may be thus questioned on grounds of mere law, there must be an equal right to question it on the ground of fact. To deny the right of retrying such a question on both the law and the fact is to deny to the right of an officer the usual protection of the laws, and to submit it to the discretion of the executive."

In 46 C. J. 974, is the following concise statement based upon that decision: "Authority given to an executive officer to fill a vacancy does not include the power to declare that a vacancy exists." Were it true that the Governor could by a mere recital forever *conclude* an officer upon the question of resignation, it would seem to follow that any governor could do the *same* by reciting any one of a number of facts by which an office is vacated, and could even·do so by a finding or declaration that an officer had died, notwithstanding the officer continued to be alive and in the active discharge of his official duties. The point is that a vacancy can not be thus created, and that the jurisdiction to appoint does not come into play until a vacancy does actually exist from one or more of the causes declared by law. Being a condition precedent to the authority or jurisdiction to appoint, it is subject to inquiry at the instance of the person whose tenure is challenged, should he desire to make an issue of it in a judicial proceeding. No citation of authority is needed for the proposition that an order or judgment of any court, officer, or tribunal may be attacked anywhere for want of jurisdiction; and the complainant for that purpose may deny the existence of the essential jurisdictional facts, where he has not done or permitted anything which may be raised as a bar against him. In *Holder* v. *Anderson,* supra, it is stated that the Governor has only such powers as are conferred upon him by the constitution and statutes of the State. It follows from what has been said, that the order of December 2, 1939, purporting to find and ·declare a vacancy in the offices of member and chairman of the State Highway Board as theretofore held by Miller, appears upon its face to be invalid, and that the lawful tenure of Miller was not affected thereby.

■ Still. other questions must be considered in reviewing the judgment overruling the general demurrer to the petition. Other facts of which we take judicial cognizance are as follows: On December 2, 1939, the Governor passed an order purporting to appoint the defendant Gillis to the term of Miller, and issued a commission to him accordingly, upon his taking the oath prescribed by law. The defendant Watson, who was holding over upon a term which had ended on February 1, 1939, qualified in like manner on December 2, 1939, for the term which up to that·time had been held by Gillis. ·Gillis, in accepting the term to which he was on

that day appointed, impliedly resigned the office therefore held by him, and thus caused a vacancy to which Watson could be appointed. Harris *v.* Watson, 201 N. C. 661 (161 S. E. 215, 79 A. L. R. 441) ; Caldwell *v.* Lyon, 168 Tenn. 607 (80 S. W. 2d, 80, 100 A. L. R. 1152) ; 22 R. C. L. 256, 259; 46 C. J. 947, § 55. Furthermore, it affirmatively appears from the record that as a matter of fact Gillis no longer claims the office formerly held by him. Watson in accepting appointment thereto terminated his tenure as an officer holding over, and was succeeded in office by Patten. The Code declares that no member of the State Highway Board shall hold another office while serving as such member (§ 95-1604) ; but even regardless of this, it is manifest that no one person could hold two memberships in such highway board. The fact that the claim of Gillis to the second membership which he undertook to assume may be absolutely void does not alter the conclusion that he impliedly resigned the membership previously held by him. 22 R. C. L. 419, § 64. The petition then, as a matter of law, correctly stated the situation with reference to each of the three memberships, and the office of chairman. Besides Miller, the other members are Watson and Patten. It appears from the petition that Gillis is no longer a lawful member of the State Highway Board. Since the petition, however, sought a judgment affecting an alleged claim of Gillis, the plaintiff properly made him a party defendant. *Smith* v. *Hodgson,* 129 *Ga.* 494 (59 S. E. 272) ; *Walton* v. *Booth,* 151 *Ga.* 452, 455 (107 S. E. 63) ; *McGinty* v. *Gormley,* 181 *Ga.* 644, 650 (183 S. E. 804) ; *Owen* v. *Butler,* 188 *Ga.* 645 (4 S. E. 2d, 635).

Ground 3 of the demurrer was as follows: "The petition as a whole is demurred to specially, for the reason that it is too vague and indefinite to support a mandamus absolute, in that it is not alleged which of the defendants are under the legal duty of recognizing the plaintiff as a member and chairman of the State Highway Board." Whether this may properly be called a general or a special demurrer, it is addressed to the petition *as a whole,* and does not assail any particular portion of it as being too vague and indefinite; and consequently this ground of demurrer will necessarily fail, unless the petition *as a whole* was so vague and indefinite that it failed to set forth a cause of action. *Askew* v *Thompson,* 129 *Ga.* 325 (3) (58 S. E. 854) ; *Johnson* v. *Hopkins,*

145 *Ga.* 817 (2) (90 S. E. 60); *Johnson* v. *Edwards,* 147 *Ga.* 438 (94 S. E. 554); *Vickers* v. *Robinson,* 157 *Ga.* 731 (5) (122 S. E. 405); *Washington Water & Electric Co.* v. *Pope Manufacturing Co.,* 176 *Ga.* 155 (2), 165 (167 S. E. 286); *Sutton* v. *Adams,* 180 *Ga.* 48, 55 (178 S. E. 365). The plaintiff was not required to plead the law, but could merely state the facts upon which he sought relief, and leave it to the court to render such judgment as appeared to be proper in the circumstances, consistently with the prayers contained in his petition. Compare *Columbian National Life Insurance Co.* v. *Miller,* 140 *Ga.* 346 (78 S. E. 1079, Ann. Cas. 1914D, 408); *Youmans* v. *Georgia & Florida Railway Co.,* 142 *Ga.* 781 (83 S. E. 784); *Malone* v. *Robinson,* 77 *Ga.* 719. Accordingly, even if the prayer might have been indefinite in that it failed to allege which two of the defendants were under a duty to recognize the plaintiff as a member and chairman of the State Highway Board, it was not, in view of the facts alleged and others of which the court would take judicial cognizance, so utterly vague and indefinite as to render the petition subject to general demurrer. Since it appears from the petition that only two of the defendants are lawful members of the State Highway Board, the prayers are properly construed as asking that only the two defendants who are actual members (and as to this the law would speak) be required by the writ of mandamus to recognize and act with the plaintiff in the official capacities asserted by him. We conclude that the petition was not subject to any of the several grounds of demurrer, either general or special, unless for the reason that mandamus was not a proper remedy; and we will next consider that question.

■ Quo warranto is usually the remedy to test the title to a public office, and it has been held by this court that it is an adequate remedy where title is the sole issue. *Stanford* v. *Lynch,* 147 *Ga.* 518 (94 S. E. 1001); *Townsend* v. *Carter,* 174 *Ga.* 759 (164 S. E. 49). As to the writ of mandamus, the Code, § 64-101, declares: "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific legal remedy for the legal rights." A proper construction of this section is that the writ of mandamus will not issue to compel official action, if there be any other specific and adequate legal

remedy, but quo warranto is not an adequate remedy, even if it might be said to be a proper remedy, where as in this case a public officer has been ousted without authority of law, or his tenure has been declared ended, and he is asserting claim as against one who is seeking to perform the duties of such office without color of authority. There is no merit, therefore, in the contention that the plaintiff should have instituted quo warranto against Gillis for the purpose of recovering the office of member claimed by him. In such a case Gillis would be the proper party to institute quo warranto if he cares to claim the office as against the plaintiff. See *Akerman* v. *Board of School Commissioners,* 118 *Ga.* 334 (45 S. E. 312) ; Comstock v. Hempstead, 83 Conn. 554 (78 Atl. 442, Ann. Cas. 1912A, 927) ; Kepley v. People, 76 Colo. 233 (230 Pac. 804) ; Couch v. State, 169 Ind. 269 (82 N. E. 457, 124 Am. St. R. 221) ; Eberle v. Clark, 87 Conn. 537 (89 Atl. 172, 52 L. R. A. (N. S.) 912) ; Carpenter v. Clark, 217 Mich. 63 (185 N. W. 868) ; Butler v. Callahan, 4 N. D. 481 (61 N. W. 1025) ; Rearick v. Board of Commissioners, 34 S. D. 256 (145 N. W. 548) ; Schmulbach v. Spiedel, 50 W. Va. 553 (40 S. E. 424, 55 L. R. A. 922) ; Pratt v. Board of Police & Fire Commissioners, 15 Utah, 1 (49 Pac. 747) ; O'Brien v. Gibbons, 196 Pa. 97 (46 Atl. 313) ; Rundberg v. Kansas City, 206 Mo. App. 17 (226 S. W. 986) ; Guion v. Miles, 210 Mo. 127 (109 S. W. 595) ; Eastman v. Householder, 54 Kan. 63 (37 Pac. 989) ; Ex parte Wiley, 54 Ala. 226; Mason v. Paterson, 35 N. J. L. 190; U. S. v. Malmin, 272 Fed. 785; Guillotte v. Poincy, 41 La. Ann. 333 (6 So. 507, 5 L. R. A. 403) ; Arnold v. Hilts, 52 Colo. 391 (121 Pac. 753, Ann. Cas. 1913E, 724). The law in such case simply says to the parties: "Play the game according to the rules which would have been applicable to the positions which you formerly occupied." The defendants can not take advantage of an invalid ouster.

There is still another reason why the plaintiff is entitled to the remedy of mandamus. In an action against Gillis, he could only recover the office from the defendant Gillis, and could not at the same time obtain an order requiring his fellow officers Patten and Watson to recognize him. Hence the remedy of quo warranto would not be as complete and adequate as the writ of mandamus. The plaintiff is not in the position of one asserting actual election to office where another was declared elected, but is claiming title

as an incumbent purportedly ousted under a void order. The case differs from such cases as *Cutts* v. *Scandrett*, 108 *Ga*. 620 (2) (34 S. E. 186), where it was held that the person claiming election against another who was declared elected should establish his claim in a contest, before seeking to recover the office. We do not overlook the contention that Gillis is at least a de facto office, and for that reason is entitled to act as such until ousted by the writ of quo warranto. We do not say that he should not be treated as a de facto officer in his relations *to the public,* but we are satisfied that he can not be so regarded with respect to the plaintiff, to whose office he has accepted appointment. Rockingham County v. Luten Bridge Co., 35 Fed. 2d, 301 (66 A. L. R. 735) ; 22 R. C. L. 600-607. So far as the plaintiff is concerned, Gillis accepted an office which was not vacant, and as between these two persons and the other members of the board, any claim that he may assert is null upon its face. *Parrish* v. *Adel*, 144 *Ga*. 242 (2) (86 S. E. 1095). In such case the law does not require that his claim to the office shall be settled by the writ of quo warranto, at the instance of Miller. The present case differs on its facts from *Bonner* v. *Pitts*, 7 *Ga*. 473, where it appeared that the plaintiff had *voluntarily* surrendered the office, and thereafter sought to recover it by the writ of mandamus. It may be said also that the defendant in that case held under color of office. The case also differs from *Townsend* v. *Carter*, 174 *Ga*. 759 (164 S. E. 49), much relied on by counsel for the plaintiffs in error, because in that case the intervening rival claimants were asserting title in virtue of a claimed election by the grand jury, *followed by commission,* while the plaintiffs were claiming as *holdovers,* attacking such election. The plaintiffs had not been ousted by an order from terms which had not expired, as is true of the plaintiff in the case at bar. The difference is important. See *Scales* v. *Faulkner*, 118 *Ga*. 152 (44 S. E. 987) ; Casey *v.* Bryce, 173 Ala. 129 (55 So. 810) ; DeShazo *v.* Davis, 157 Va. 517 (162 S. E. 320, 81 A. L. R. 614) ; Heyward *v.* Long, S. C. (supra) ; 9 R. C. L. 1114, 1153, §§ 116, 144; 18 R. C. L. 263-265, §§ 189, 191, 192; 38 C. J. 707-712, §§ 292-300. While the facts in *Holder* v. *Anderson,* supra, may be different in that there was no rival claimant in that case, this does not afford a reason for holding that the writ of mandamus, which was held to be a proper remedy there, is not also an available remedy here. The court did not

err in refusing to sustain the demurrer and dismiss the petition, on the ground that the writ of mandamus was not a proper remedy.

This is not a suit to test the title to an office as against the State, but is a contest solely *between rival claimants,* as to who has the better claim. If it were a suit of the former class, it might be contended with greater reason that quo warranto was the remedy. 51 C. J. 309, § 1, note 1; 22 R. C. L. pp. 590, 656, §§ 1, 309.

■ We consider next the assignments of error upon the sustaining of the plaintiff's special demurrers to portions of the defendants' answer. The first was a special demurrer to paragraph 22 of the answer, alleging that a vacancy existed in the offices claimed by the plaintiff "occasioned by the fact that the plaintiff, who had at one time acted as a member of said board, had resigned, and his resignation had been accepted by the Governor." The demurrer sought information as to when and in what manner, whether expressly or by implication, it was claimed that the plaintiff had resigned. Since a resignation may be either express or implied, and the date of the resignation was not alleged, the court did not err in sustaining this demurrer and requiring the defendants to amend. They declined to amend in accordance with the order so far as it related to these grounds of demurrer; and so the allegations of paragraph 22 were properly treated as stricken in the subsequent proceedings. The plaintiff demurred also to paragraph 23 of the answer alleging that he had abandoned his office and ceased to perform the duties thereof. The court did not err in sustaining the demurrer attacking this allegation as a mere conclusion of the pleader. The defendants refused to amend, as in the preceding instance.

In response to a demurrer and the order entered thereon, the defendants offered an amendment to their paragraph 24, wherein it was alleged that the plaintiff had placed himself in a position of ineligibility by becoming the holder of a prohibited Federal office, to wit, a member of the Advisory Committee of the Atlanta Agency of the Reconstruction Finance Corporation. This amendment was allowed by the court; and consequently no question arises as to the correctness of the order sustaining the demurrer to paragraph 24. The court did not err in sustaining the plaintiff's special demurrers, so far as any question relating thereto is presented for decision.

■ The final question is whether the court erred in entering judgment on the pleadings, instead of submitting the case to a

jury. Under the allegations of the petition and admissions in the answer, considered with facts of which this court takes judicial cognizance, it can not be held that any issue of fact was presented. All the questions raised have been sufficiently discussed in the preceding divisions, with one or two exceptions. The alleged office of "a member of the Advisory Committee of the Atlanta Agency of the Reconstruction Finance Corporation" is not an office of profit or trust under the Government of the United States, within the meaning of the Code, section 89-101 (4). The Reconstruction Finance Corporation is a governmental corporation, created by Congress, but it is not the government (cf. Keifer v. Reconstruction Finance Corporation, 306 U. S. 383 (59 Sup. Ct. 516, 83 L. ed. 784)); and it has been held that membership in one of its advisory committees is not an office of trust or profit under the Government of the United States. Kingston v. LaGuardia, 156 Misc. 116 (281 N. Y. Supp. 390).

While it has been said that ordinarily mandamus is not a remedy to try the title to office, and will go no further than to adjudicate the right of possession, the question of title may become incidentally involved in an action of mandamus to restore possession or to install a person in an office to which he is entitled. In such case, it seems to us that title is necessarily adjudicated, and that it is futile to deny that it is or should be done. In 18 R. C. L. 256, § 179, it is stated: "To entitle the respondent to invoke the rule that mandamus will not lie to try the title to an office as between rival claimants, it must appear that he has a colorable title to the office and is in possession and discharging the duties thereof under a claim of right. A mere usurper is not permitted to invoke such a rule." In 38 C. J. 707, § 292, it is stated: "An exception to the general rule that title to office will not be tried in mandamus proceedings has been recognized in some cases which hold that, where the facts are not in dispute and the issue is one of law only, the court may proceed to settle the right to an office under proceedings in mandamus as well as in any other proceeding." In the present case the facts are not in dispute. The question of the right of possession depends solely upon questions of law. All necessary and proper parties are before the court. The facts are such that an adjudication upon the right of possession necessarily carries with it a determination of the respective claims of title *as between the*

*parties,* although title as against the State may not be involved. To say that mandamus in such case would not incidentally determine the title as between the parties would be to attach "too great importance to the mere form in which an issue is presented." McDowell *v.* Burnett, 90 S. C. 400, 405, 73 S. E. 782. See *Akerman* v. *Board of School Commissioners,* 118 *Ga.* 334 (45 S. E. 312).

The court did not err in any of the antecedent rulings, or in rendering final judgment in favor of the plaintiff, granting a mandamus absolute, directing the defendants Patten and Watson to recognize the plaintiff as a member and chairman of the State Highway Board, and to afford him an opportunity to perform the duties incident to these offices.

■ Miller also filed against Patten an information in the nature of a quo warranto, alleging that he as relator is chairman of the State Highway Board, but that Patten has usurped the office and is discharging the duties thereof. Only the office of chairman was brought into question by this proceeding, and Patten was the only party defendant. He demurred to the information on various grounds, and filed an answer. The court overruled the demurrer, and, on concluding that no issue of fact was involved, rendered judgment in favor of the relator. Patten excepted. This quo warranto case and the mandamus case have been considered together, but it turns out that the rulings which must be made in the mandamus case will necessarily determine the entire controversy between the parties. The point is made, in the quo warranto case, that the chairmanship is affixed to the term for which Miller was appointed, that it is not separate and distinct therefrom, and that Miller could not maintain an action for the chairmanship against Patten, who does not in fact hold the term to which Miller was appointed. It is further insisted by counsel that a judgment in favor of Miller in such case would either have the effect of making the Highway Board consist of three members and an additional person as chairman, or else would attempt an adjudication that Gillis, who claims the term to which Miller was appointed, is not a member of the board, although he was not a party in the quo warranto case and consequently would not be bound by the judgment. While the questions thus suggested are quite interesting and perhaps doubtful, a decision thereon in favor of Patten would manifestly be of no material benefit to him, in view of the

rulings in the mandamus case, except to place the costs on Miller as defendant in error. "In no case will the Supreme Court undertake to pass upon questions presented by a bill of exceptions, when an adjudication of them, even though favorable to the plaintiff in error, could not possibly result in any practical benefit to him." *Benton* v. *Singleton,* 114 *Ga.* 548 (4) (48 S. E. 811, 58 L. R. A. 181). To the same effect see *Edwards* v. *Central of Georgia Railway Co.,* 118 *Ga.* 678 (45 S. E. 462); *Lamar* v. *Lamar,* 118 *Ga.* 684 (45 S. E. 498); *Akerman* v. *Board of School Commissioners,* 119 *Ga.* 27 (45 S. E. 725); *Arnold* v. *Arnold,* 180 *Ga.* 560 (179 S. E. 715); *Williams* v. *State,* 187 *Ga.* 415 (1 S. E. 2d, 27). Nor will a case be retained and decided "merely for the purpose of fixing liability for costs." *Davis* v. *Cason,* 185 *Ga.* 334 (2) (194 S. E. 874); *Tabor* v. *Hipp,* 136 *Ga.* 123, 124 (70 S. E. 886, Ann. Cas. 1912C, 246). It follows that the writ of error in the quo warranto case must be dismissed.

*Judgment affirmed in mandamus case. Writ of error dismissed in quo warranto case. All the Justices concur.*